Kent, Ch. J.
Whether the respondent did or did not know of the defeasance, when he took an assignment of , t i , , the bond and mortgage, appears to meto be immaterial, as it respects the claims of the appellant. He took the bond and mortgage, subject to every defence that existed against them in the hands of Rawlins. Clute could not be prejudiced by the assignment. His right, founded upon the bond of defeasance, remained the same. There is no rule of equity better settled, than that a bond, or other chose in action, is liable to the same equity in the hands of the assignee that existed against it in the hands of the obligee, (a) (2 Vern. 692. 765. 1 Vesey, 122.) The registry act concerning mortgages has nothing to do with this case. The respondent does not stand here in the character of a bona fide purchaser of lands, but as as-signee of a bond. He took the bond as payment or security for a debt, and the mortgage by which that bond was secured, followed it as an incident. The case before us is, therefore, tobe considered, and decided, in the same manner, and upon the same grounds, as it would have been if Rawlins had never assigned the bond, and had himself filed a bill to foreclose the mortgage.
Another point made in the cause, is, as to the competency of parol proof to explain what was intended by a good and sufficient deed or conveyance of the 300 acres in Calen. I agree that this proof was in a great measure, unnecessary in the present case, for a covenant to execute and deliver a good and sufficient deed of a piece of land, does not mean merely a conveyance good in point of form. That would be a covenant without substance. But it means an operative conveyance ; one that carries with it a good and sufficient title to the lands *613 to be conveyed. The appellant confesses, in bis original answer, that this was the understanding of the parties in the present case, for he states, that as his title to the 300 acres was not complete on the 28th of February, 1800,. in order toinsurea conveyance thereof, by thelst of May, he executed the bond, and mortgage, and took the defeasance.
.This being the meaning of the parties, the next inquiry is, has the appellant conveyed or tendered such a title ? This inquiry has led the counsel into a long and critical examination of the validity of patents granted to soldiers, who died before the date of the concurrent resolutions of the 27th March, 1783. It will not, however, be necessary to give any opinion on that question, because it is evident, that the parties did not consider those patents as conveying the requisite title, within the purview of their contract. When Clute tendered his deed in April, 1800, the title was in the same condition as it was when the defeasance was executed in February; and then the title was not complete, according to the confession of the appellant, in his original answer; and in the supplementary bill and answer, both parties admit that doubts existed as to the goodness of such titles. That those doubts were deemed serious and weighty, is evident, from the report of the Onondaga commissioners, made in February, 1800, and from the act of the legislature of the 5th of April, 1803. In the year 1800, the validity of those patents had not been established, nor those doubts removed, either by an act of the legislature, or the judgment of a court of law. It was this doubt that rendered the title incomplete, in the contemplation of the parties, on the 28th of February, 1800, and which induced them to postpone the execution of the deed from February to May. This fact is sufficiently evident from the allegations of the parties, without resorting to the parol proof. A doubtful title, undone declared by a tribunal specially appoint *614 ed to inquire into, and decide on the titles to the military lands, was not the good and sufficient title intended and _ ® , required by the defeasance. It is upon this ground,, and without giving any opinion on the question touching the original validity of the patent in the case before us, that Í consider Cluie as having failed in the performance of his condition, and that his tender in April, of a title, no less doubtful, and no less incomplete, than it was in February preceding, did not save the forfeiture of his bond*
But it is conceded, that the act of the 5th of April, 1803, made valid all such letters patent, and that when the respondent filed his supplementary bill, in June, 1803, the appellant had a good and sufficient title. He ought, then, in my opinion, to have been admitted to a specific performance of his contract. It is an acknowledged rule in chancery, that if a party entering into a contract to sell, has a good title at the time of the decree, or the coming in of the master’s report, itis sufficient. The inquiry, in such cases, is, whether the seller can then, and not whether he could at the time of the contract, make a title. (Langford v. Pitt, 2 P. Wms. 629. 10 Vesey, jun. 315.) The injury, if any, arising from this delay, to the owner of the bond and mortgage, is susceptible of a just rule of compensation. When such a rule can be found, it removes every obstacle to a relief against the forfeiture of the contract, arising from the failure of the performance of the condition. (1 Fonb. 387, 388. The compensation, in the present case, for this delay, is the interest on the bond; and this may be considered as the rule of compensation agreed on by the parties.
For these reasofis, I conclude, that the decree of foreclosure ought to be reversed, and that the appellant is entitled to have his bond and mortgage delivered up to be cancelled, upon his executing and delivering to there *615 spondent, a good and sufficient conveyance of the 300 acres in Galen, in such form, with such covenants, and in such time as the court below shall direct. But as the title may have since become affected in the hands of Clute, it would be proper for the court below to refer it to a master to report, whether the title continued complete, up to the time of such inquiry. And the appellant must, further, pay interest on the bond, from its date. The time for which interest ought to be paid, may admit of different opinions. It ought clearly to be carried down to the time of filing the answer to the supplementary bill, because, until then, the appellant was in default. In that answer, he declared himself ready, and offered to convey, and he was then in the condition to convey, a good title. It may be said, that the respondent ought to have accepted that offer, and that he ought not, afterwards, to receive interest, as it was his own neglect not to have taken the title. I was, at first, of this opinion ; but, when we consider that the general and loose offer in the answer, was not accompanied with the execution of any actual conveyance, nor with the tender of any of the costs up to that time, and. that the land was, in the mean time, continued in the possession of Clute, and, for aught that this court can know to the contrary, may have been productive by means of the timber or other products of the soil, I have rather concluded, that the appellant ought to pay interest to the time of this decree, together with the costs in the court below.
This being the unanimous opinion of the court, it was, thereupon, ordered, adjudged and decreed, that the decree of his honour the chancellor be reversed, and that the bond and mortgage mentioned in the respondent’s bill be delivered up to be cancelled, upon the appellant’s paying the interest on the said bond, from its date to the time of this decree, with the costs in the court below, and *617 upon the appellant’s conveying to the respondent, his heirs and assigns for ever, a good title to 300 acres of land, in lot No. 56, in the township of Galen, by a deed in such form, with such covenants, and to be executed within such time, as his honour the chancellor shall direct, after it shall have been ascertained by a reference to a master, or otherwise, that the title in the appellant remains good and unencumbered ; and that the pleadings and proceedings sent here from the court of chancery be remitted, to the end that this decree may be carried into execution.
Judgment of reversal.

 An assigned obligation is subject to the same equity in the hands of the assignee as it wasin the hands of tiae original obligee. 1 Pool, 349.