HENTZ (McGEHEE v.). See Case No. 8,-794.

HENZIER (BUFORD v.). See Case No. 2,-114.

HEPBURN (AULD v.). See Cases Nos. 650 and 651.

---

## Case No. 6,389.

### HEPBURN et al. v. AULD.

### DUNLOP et al. v. HEPBURN et al.

[2 Cranch, C. C. 86.] [1]

Circuit Court, District of Columbia. Nov. Term, 1813. [2]

EQUITY — REAL ESTATE — BILL TO VACATE CONTRACT—ABILITY TO CONVEY GOOD TITLE AS A DEFENSE.

If the vendee of land bring a bill to vacate the contract because the title has been adjudged defective, the defendant may resist a decree by showing himself to be now ready to make a good title, if time be not of the essence of the contract, although a former bill by the vendor for a specific performance had been dismissed on account of the defect of title.

[See note at end of case.]

Dunlop & Co. brought their bill in equity against Hepburn & Dundas, to annul the agreement of the 27th September, 1799, and to compel an account, and to pay the balance. Hepburn & Dundas brought their bill against Colin Auld, agent of Dunlop & Co., for a specific performance of that agreement. A former bill in equity, brought by Hepburn & Dundas against Auld, to compel a specific performance of the same agreement, had been dismissed by the supreme court of the United States, for want of a good title in Hepburn & Dundas, to the land mentioned in Graham's contract. 5 Cranch [9 U. S.] 262. After the dismissal of that bill at February term, 1809, Auld, in the name of his constituents, Dunlop & Co., brought the present bill in equity to vacate the agreement of the 27th September, 1799. On the same day on which the subpoena issued in this case, H. & D. informed Auld that they had perfected their title, and were ready to execute a deed to him for the Ohio lands, upon his paying the balance; that is, the difference between the award and the stipulated value of Graham's contract. To which offer Auld replied that Dunlop & Co. had issued process against them to compel them to pay their debt and interest, in money; and that he did not believe that a court of equity would, under all the circumstances, compel them to take the land in satisfaction of the debt. After this, Hepburn & Dundas brought their second bill in equity against Auld for a specific execution of the agreement, and to compel him to take the land, and pay the difference between the award

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reversed in 1 Wheat. (14 U. S.) 179.]

and the stipulated value of Graham's contract.

In answer to the bill of Dunlop & Co., which seeks to vacate the contract, and to open the account, and to compel payment of the whole debt in money, H. & D. say: (1) That the accounts are all closed by the award, and cannot now be opened. (2) That it was decided by the supreme court of the United States, in the suit at law brought by Auld for the penalty of the articles of agreement, that the tender of the assignment of Graham's contract, as pleaded, was a good tender; and that Auld ought to have accepted it; and that if he had accepted it, it would have discharged the debt due upon the award. And although this did not relieve them from the duty of executing a proper deed, when required, yet they are in no default, inasmuch as no conveyance has been required; and they are now able, and have offered, to make a good conveyance of the land to him, upon his paying the difference. In answer to the bill of H. & D. against Mr. Auld, he resists a specific performance, at this late period, on various grounds: and among others, because the tender of the assignment of Graham's contract was upon condition that he should first execute and deliver to them a release of all demands, &c.; and because their title was defective until March, 1809, after their bill for a specific execution had been finally dismissed by the supreme court; and because the object of Auld was to receive payment of a debt, and not to purchase land; and therefore time was very material; especially as it was well known to both parties that the rents and profits were by no means equal to the interest of the debt, and that the land has depreciated very much during this delay of the title.

CRANCH, Chief Judge. These causes are set for hearing on the bills, answers, exhibits, and sundry depositions respecting the value of the land and its depreciation. There seems to be a considerable difference of opinion as to the value of the land, but the balance of evidence inclines to the fact that the land never was worth more than $18,000 in cash, and that it has greatly depreciated. This is not a common case of vendor and vendee, where the object is the purchase of an estate, the rents and profits of which may be an equivalent for the interest of the purchase-money, whereby delay is rendered immaterial. But it is the case of a creditor seeking payment of his debt, and of a debtor seeking to pay off his debt in lands. It is well known that in this country, the price of lands, especially of new lands, fluctuates very much; and therefore where the object is to raise money by the sale of lands, to pay off a debt, time is very material. I should therefore doubt of the propriety, in this country, of applying

to such cases the rule of equity which has prevailed in England, between vendor and vendee, that if the vendor's title is perfected before a decree upon his bill for a specific performance is rendered against him, a specific performance shall be decreed. But if it be proper to apply that rule to such a case as this, yet the inference from the same rule is, that if the vendor's title be not perfected before decree on his bill, the decree shall be against him; and I do not remember a case in which a vendor has obtained a decree for a specific performance upon a second bill, brought after a dismissal of the first for want of title. If his right to a specific performance be not barred by the dismissal of his first bill on the merits of his case, will it be barred by the dismissal of his second, or third bill? If not, where shall he be stopped—or what end can there be to the controversy?

This view of the subject would be conclusive in my mind, if Mr. Auld had not brought a bill to vacate the contract, thereby impliedly admitting it to be in force until declared void by a decree of this court. When a court is called upon to vacate a contract by reason of the non-execution thereof by the other party, the defendant has a right in equity to offer himself able, ready, and willing to perform it; and if he do so offer, the court ought to suffer him to perform, if time be not of the essence of the contract. In this case, the supreme court has declared, in effect, that time is not material, if the party can make a good title before the decree. Mr. Auld having instituted a suit, praying for a decree to vacate the contract, it would seem, by analogy to cases of foreclosure, that H. & D. would have a right to perform before the passing of that decree, if they can.

The judgment of the supreme court in the suit at law, brought by Auld against H. & D. was in their favor only upon the tender of the assignment as pleaded in one of the pleas, in which the title was not brought in question. On the other two demurrers, if they gave judgment at all, it must have been in favor of Auld, because those demurrers brought into view the same defects of title which the supreme court decided to be sufficient to dismiss the bill for a specific execution of the contract. The effect, therefore, of the opinion of that court upon the two cases, was, that although the tender, as pleaded, was good, yet upon all the facts of the case it was not such a tender as Auld was obliged to accept. The tender of the assignment has been considered by the counsel of H. & D. like a tender of so much money, which stops interest from the time of tender until a new demand be made. But the tender which will stop interest, must be a tender of that which the creditor is bound to accept. Here the supreme court has decided that Mr. Auld was not bound to

accept the assignment tendered, and therefore such a tender does not stop interest. Mr. Auld was bound to receive only such an assignment, of such a contract, with such powers as would enable him to maintain an ejectment against Graham's heirs, or would enable him to compel a specific performance by payment of the purchase-money. It is immaterial what were Mr. Auld's motives at the time, for refusing to accept the assignment. H. & D. must show that he was bound to accept what they tendered; and as they could not tender what he was bound to accept until the 20th of March, 1809, and did not give him notice of their ability to perform until the 27th of March, 1809, they ought to make compensation for the delay by payment of interest upon the amount of the award from its date to the 27th of March, 1809. Such a decree is conformable to the precedent in the case of Clute v. Robison, 2 Johns. 595, in the court of errors at New York, a precedent entitled to much respect, not only for its equity, but on account of its being the unanimous decision of a most respectable court. That case, indeed, seems to justify the calculation of interest to the time of this decree; and we have considerable doubt whether it ought not to be so calculated, because H. & D. did not make a regular tender of a conveyance, and had been in the receipt of the rents and profits ever since that time; but as they declared their readiness to convey a good title on the 27th of March, 1809, and as Mr. Auld in his answer intimated that he was not then bound to accept such a conveyance, we think he waived the necessity of a tender, and therefore the interest ought to stop at that time. As the interest on the debt is to stop on the 27th of March, 1809, and as Dunlop & Co. were bound on that day to receive the title offered, they are entitled to the rents and profits which may have accrued since that date, and an account of them ought to be taken, if required. (To avoid an account, however, the court gave interest to the present time, December 23, 1813.)

These suits having been heard at the same time,

THE COURT, in the suit of Dunlop & Co. v. Hepburn & Dundas, decreed that H. & D. should pay to Dunlop & Co. or their agent, Colin Auld, the sum of $33,060.37, being the sum awarded, at the par of exchange, with interest thereon, at 5 per cent. from the 1st of January, 1800, till the time of rendering the decree; but that the sum of $21,112, part thereof might be discharged by a conveyance, within a certain time of the land mentioned in Graham's contract to Colin Auld in trust for Dunlop & Co.

And in the suit of Hepburn & Dundas v. Auld, that upon H. & D.'s making the payment in that manner, Auld, as agent of Dunlop & Co. should execute and deliver to H. & D. such a receipt and discharge of all the claims of Dunlop & Co. against them, as the court might approve.

Reversed by the supreme court (1 Wheat. [14 U. S.] 179), who ordered the bill of Dunlop & Co. v. Hepburn & Dundas to be dismissed; and in the case of Hepburn & Dundas v. Auld, decreed a sale of the land mentioned in Graham's contract, and the proceeds to be paid to Dunlop & Co. or their agent, and that H. & D. should convey the lands to the purchasers; and that H. & D. should pay to Dunlop & Co. or their agent, on or before the 1st day of April then next, $9,143.72, being the difference between the sum awarded with interest thereon at 6 per cent. per annum from the 1st of January, 1800, to the 27th of March, 1809, and the sum due upon Graham's contract on the 1st of January, 1800, and that an account should be taken of the rents and profits since the 27th of March, 1809, and that H. & D. pay over the same to Dunlop & Co. or their agent. The only substantial difference between this decree and that of the circuit court is, that it gives interest upon the award at 6 per cent. from 1st January, 1800, to 27th March, 1809, and the rents and profits afterwards; whereas the decree of the circuit court gave interest upon the award at 5 per cent. from the 1st of January, 1800, to the time of the decree, in lieu of the rents and profits.