## MERRILL *vs.* MERRILL.

Where a creditor for goods sold and delivered became the surety of another in a promissory note not negotiable, payable to his debtor, which note was assigned by delivery ; and being afterwards required by the assignee to pay the note, referred him to the other promissor as the real debtor, *but said nothing of the debt due to himself*, as a subsisting claim in offset ;—it was held that this was a waiver of such claim, as against the assignee, and that the latter was entitled to recover of the surety the whole amount of the note.

*Assumpsit* on a promissory note not negotiable, brought in the name of *Humphrey Merrill* against *Andrew Merrill* and *Nathaniel Merrill*, for the benefit of *Uriah Holt*, who claimed the amount as assignee of the note by delivery only, for a valuable consideration paid by him to the nominal plaintiff. The defendants claimed, by way of offset, the value of certain neat stock and a horse, delivered by *Nathaniel Merrill* the defendant to *Humphrey*, his son, about three years before the date of the note.

At the trial in the Court below before *Smith J.* it appeared that *Andrew*, in the year 1819, had bought a parcel of land on credit, of *Humphrey*, his brother, and being a minor, their father was requested to sign the notes as his surety ;—and it being suggested that the father might possibly be put to inconvenience, by being compelled to pay, *Humphrey* replied that if he should ever be troubled in that way, he might protect himself by claiming in offset the value of the stock and horse for which *Humphrey* owed him ; whereupon he signed the notes.

It further appeared that these notes, in *August* 1819, were sold by *Humphrey* to *Holt*, in part payment for a farm, *Humphrey* declaring that they were good, and that his father would pay them when due ;—that *Holt*, at the maturity of the first note in *May*, 1820, sent *that*, and a paper containing a calculation of the interest due on the second note, which is now in suit, to *Nathaniel Merrill*, requesting payment to *Holt* ;—that the defendant said he

could not pay it ; and that as *Andrew* was under age, *he* signed the notes merely to secure *Humphrey*, but that it was agreed that *Andrew*, when he became of age, should take up the notes and save his father harmless ;—but he claimed no offset, and said nothing of any demand in his own favor against *Humphrey*. The first note was paid by *Andrew*. At the time of the delivery of the notes to *Holt*, and long afterwards, *Humphrey* was in good circumstances, and able to have paid the amount of this note to his father ; but was since insolvent. *Holt* had no knowledge of any offset, till it was filed in this action.

Upon this evidence the Judge instructed the jury that the account in offset could not be allowed against the note, if they believed that the note was assigned to *Holt* before he had notice of the existence of the counter demand. To this the defendants excepted, the verdict being for the plaintiff for the amount of the note.

*Greenleaf*, for the defendants, relied on the principle recognized in all the cases on this subject, that the assignee could claim no other or greater rights than the assignor had before him ; and that as between the *parties to the record*, the demand filed in offset was unquestionably a good bar to the action.

*L. Whitman*, for the plaintiff, admitted the general doctrine ;—but contended—1st, that the demand filed in offset being due to only one of the defendants, was not available in this action ;— *Walker v. Leighton & al.* 11 *Mass.* 140. 2d, that the defendant, by not claiming the benefit of the offset, or giving notice of it to the assignee while *Humphrey* was able to have responded to him for the amount of the note, deserved to sustain the loss himself; and that the direction of the Judge in this respect was correct. *Jenkins v. Brewster* 14 *Mass.* 291.

After this argument, which was had at *August* term 1824, the cause stood continued for advisement ; and the opinion of the Court was now delivered as follows, by

MELLEN C. J. On the 26th of *April* 1819, the defendant signed the note declared on as surety for his son *Andrew*, for $62 60 payable in four years with interest annually. The note was not

negotiable; but in *August* following was assigned by the plaintiff for a valuable consideration to *Uriah Holt*, for whose benefit the present action is prosecuted. About three years prior to the signing the note, the plaintiff was indebted to the defendant for a horse, and a pair of steers, in the sum of $76 on account; which circumstance was mentioned to the defendant, when the note was signed, as a reason why he should not apprehend danger or any serious loss, inasmuch as he could file his account in offset, should he be troubled or sued on the note. The account was duly filed against the note in this action; but as *Holt* had not been notified of its existence, until at or just before the trial, the Court of Common Pleas rejected it; or, in other words, decided that it could not be allowed in offset against the note;—and on exception to this decision the cause comes before us, and the first question is, whether the opinion is correct. The principle is well settled, that negotiable securities, indorsed before they are over-due, are not liable to be impeached in the same manner *as between the original parties, with a few exceptions;* such as gaming and usurious notes, &c.; which are declared void by the statute. In other cases the indorsee, who is such *bona fide,* is not affected by contracts, conditions or equities, of which he had no notice, that existed between the promissor and promissee. The principle is founded on the importance of negotiable and negotiated securities in the commercial community. A different doctrine would essentially check their circulation and embarrass mercantile operations. In *Peacock v. Rhodes* 2 *Dougl.* 632, *Lord Mansfield* lays down the principle in these words. " The holder " of a bill of exchange or promissory note is not to be considered " in the light of an assignee of the payee. An assignee must " take the thing assigned subject to all the equity to which the " original party was subject. If this rule be applied to bills and " promissory notes, it would stop their currency." But the same law is not applicable to notes which are not negotiable, and to bonds, &c. As these cannot be legally indorsed or assigned, so as to enable the indorsee, or assignee more properly called, to maintain an action in his own name; the interest which in these cases is assigned, is only an equitable interest. But this is now protected in courts of law as well as of equity, when assigned

upon valuable consideration. In the case before us the counsel for the defendant does not deny that whatever equitable rights the assignee has, ought to be protected; but he denies that he has any, because the plaintiff had none which he could assign to him. He contends that nothing more can be recovered for the benefit of *Holt* the assignee, than could be rightfully recovered, provided there never had been any assignment; or, in other words that nothing can be recovered, because the amount of the offset is greater than the amount of the principal and interest of the note. In *Chute v. Robinson 2 Johns.* 595, *Kent* C. J. says, "There " is no rule of equity better settled than that a bond or other " chose in action is liable to the same equity in the hands of the " assignee, which existed against it in the hands of the obligee." In *Dunning v. Sayward* 1 *Greenl.* 366, the Court observed that " the law does not interpose and protect any but an equitable in- " terest" in case of assignment. It seems to be plain that before the assignment of the note in question was made, the defendant had a legal right to offset his account against it if then due, when sued; and it deserves consideration whether he can be deprived of that right without his consent. He may relinquish it express- ly or by implication. The case does not find that he did it ex- pressly; the debt filed in offset was fully proved, and also the defendant's reliance upon it before the assignment, by way of in- demnity, if called on for the note which he signed. The very protection of an equitable interest in an assignee, presupposes danger and the need of protection; it pre-supposes a power in the assignee or debtor, or both, to defraud the assignee unless he is protected by courts of law. Now in cases where there is not any such power, legal protection is unnecessary, and the princi- ple of law is inapplicable. Hence it would seem to follow, that if in the present case the action could not be maintained if there had been no assignment; then the assignment cannot create a right of action, and confer an equitable interest, if the assignor had no interest of any description as against the defendant. In fact, this principle, of which, we are speaking, requires no more nor less than this; that in case of an assignment, the cause shall be tried and decided upon the facts as they existed at the time of the assignment; without regard to any acts of the assignor after

such assignment, or any acts of the debtor, injurious to the assignee, after notice of it. The application of these rules, founded in justice and good faith, appears to shew that the offset should have been admitted as a good defence against the action, if not waived. The counsel for the plaintiff has relied, among other cases, upon that of *Jenkins v. Brewster* 14 *Mass.* 291. The Court have not given us the reasons of their opinion, but in general language speak of the " peculiar circumstance of the case" as having deprived the defendant of the benefit of his offset. The opinion is certainly shorter than it is clear. The Court however acknowledge the general right of offset of a debt, existing prior to the assignment; but consider the facts of that case as taking it out of the general principle. They observe that " after the " assignment of the contract, and notice thereof to the defendant, " he could not, by any act of his, deprive the assignees of their " rights under the assignment." Certainly not. The act they refer to must be the contract made with the plaintiff after the assignment; in virtue of which he relied on his offset. It was decided that it could not be allowed. The cases of *King v. Fowler & al.* and *Fowler & al. v. King* 16 *Mass.* 397, presented a question as to the right of offseting the damages in one action against those in the other, where there had been an assignment; but on examination it appears that the question was decided upon the ground of waiver and acquiescence in the assignment. But the right of offset, in cases similar to the present, has been recognized and sanctioned by repeated decisions in *Massachusetts* and *N. York.* The cases of *Hatch v. Green, admr.* and *Green, admr. v. Hatch* 12 *Mass.* 195, came before the Court on a rule upon *Green* to shew cause why his judgment should not be offset, and deducted from *Hatch's* judgment against *Green.* It was opposed on the ground that *Green's* judgment, or the debts for which it was recovered, had been assigned to *J. & W. Smith,* creditors of *Green,* and by them assigned to certain other creditors, for whose use the action was prosecuted. *Parker* C. J. in giving the opinion of the Court says, " The Court would " undoubtedly protect an assigned debt in the hands of the as- " signee against a judgment obtained by the debtor upon a de- " mand subsequent to notice of such assignment. But when the

" judgment claimed to be set off is founded upon a demand coeval " with the one against which it is offered, equity would not re- " quire that an assignee should enforce the judgment, against the " rights and interest of the judgment debtor. The assignee ought " to be placed in as good a situation as the assignor would have " been without the assignment, but no better. In an equitable " point of view, where there are counter demands subsisting, " liable to be set off against each other, one only is the debtor, " viz. he against whom a balance would remain." In the above case the Court directed the offset to be made. In *Mowry v Todd* 12 *Mass.* 281, the principle relied on in this case is clearly stated. *Todd* made a written promise to *Fisher*, who, by an unsigned and incomplete indorsement transferred his interest in the contract and delivered the same to *Mowry*; and *Todd* afterwards, express- ly promised to pay the debt to him. On this ground the Court sustained the action in *Mowry's* name. The Chief Justice pro- ceeds, " With respect to the right of the defendant to set off any " demand against *Fisher*, we think his engagement to pay the " plaintiff effectually precludes him. When notified of the as- " signment, if he had stated his counter claims, and promised to " pay only such balance as might be due, his debt would have " been protected; or if he had not promised at all, the action " must have been brought by *Fisher*; and he would have had a " right to set off according to the statute, if legally and equitably " entitled; but his promise to pay amounts to a relinquishment of " his right." In the case of *Jones v. Witter* 13 *Mass.* 304, which was cited by the plaintiff's counsel, the principle is stated with equal clearness. The Chief Justice in giving the opinion of the Court says, " The contract between assignor and assignee " is operative between them only, until some act takes place " which brings the maker of the note into the contract; this act " is notice to him; and after such notice it becomes entirely " immaterial to him which shall be his creditor; as all payments " or lawful offsets, existing before such notice, will be allowed " him." The case of *Gould v. Chase* 16 *Johns.* 226, in all its material facts is precisely similar to the one under consideration, with this exception; that in the former, *Chase* had distinctly acknowledged the rights of the assignee and promised to pay him

Merrill v. Merrill.

the debt. The Court decided that the age of his offset, taken in connection with this express promise to the assignee, must be considered as a complete waiver of his right of offset. But every thing in the case shews that had it not been for this promise and waiver, the offset ought to have been allowed. Neither Court or counsel intimated a doubt as to the general principle. This review of the cases in relation to the subject of assignments and offsets, we have deemed useful; and it will aid us in arriving at a proper conclusion in the decision of the cause. According to these, the defence should have been sustained, unless it has been lost on the principle of waiver. It does not appear on the report that the defendant ever promised *Holt* to pay him the note; or expressly admitted his rights as assignee; but there are some other circumstances in the case which deserve attention, and which have been relied upon to shew a consciousness on the part of the defendant, that he had no claim on account against the plaintiff; and that the offset was at a late hour relied on as a defence. These we will notice presently. The account has been proved; and there is no direct evidence that it has ever been paid. The opinion of the Court to which the exception was alleged, was, " that the said account in offset, though proved, could not be " allowed against the note declared on, if the jury believed that " said note was assigned to said *Holt* before he had notice of the " existence of the account." We apprehend that the authorities are clearly against this opinion, and uniformly so; and the question of *scienter* on the part of the assignee, in respect to existing equities on the part of the debtor, is of no kind of importance; the demand assigned must be taken subject to all such equities, known or not known. We apprehend also that the variance discoverable in the decisions on this subject arises from the circumstance of waiver of the right of offset, which in some of the cases was satisfactorily proved. In this case, each party has his equities; and we must impartially protect both ; and in so doing we must inquire whether, from all the facts before us, the legal inference is, that the right of offset has been waived; if so, it would be useless and improper to send the cause to another trial, although the instructions of the Judge to the jury, on the point of notice, as we have already mentioned were incorrect.

We will now notice the facts in the case which are relied upon by the assignee as shewing, or amounting to, a waiver of the right of offset; and shewing also such an understanding and management between the father and the son as in legal contemplation amounts to collusion; and therefore, entitled to no countenance in a court of justice. The horse and steers were sold in the fall of 1815 or 1816. The note in suit was signed in *April* 1819. *Humphrey* was then in good circumstances, and able to pay the debt due on account of the horse and steers for a long time afterwards, but failed before the commencement of this action. In *May* 1820, *Holt's* agent called on the defendant, and informed him of the assignment and requested payment of one note and interest on this. The defendant replied that he could not pay the note; that as *Andrew* was under age, he signed the note to secure *Humphrey*; and that *Andrew*, when of age, would take up the notes and clear said *Nathaniel.* The defendant did not claim to have any offset to the note, and said nothing about any account he had against *Humphrey.* And now what is the legal inference to be drawn from these uncontested facts? We are here presented with the declarations and the conduct of the defendant, in relation to the demand in suit; and it does not appear that from *April* 1819, until the offset was filed in the clerk's office, after the action was commenced, any notice was taken of its existence. Is this conduct and are these declarations natural? Do people transact business in this manner? Are they in the habit of paying debts which they do not owe, and when a balance is due them from those who are asking for payment? If the account for the horse and steers had not, in some way or other, been settled and satisfied before *May* 1820, or if the defendant had relied upon it by way of offset, can it be believed that the defendant would not then have named his offset, given notice of it to *Holt's* agent, and claimed its allowance, instead of saying that he could not pay, but that *Andrew* would, as soon as he should be of age? This conduct may all be explained by the insolvency of *Humphrey.* After his failure the defendant could obtain no reimbursement of what he might be compelled to pay for him as his surety; and then to avoid such an eventual loss, and thereby at once to relieve himself even from liability, he set up his old claim on the account in bar of

this action.   The facts naturally  lead the  mind to this conclu-
sion, and such a conclusion is fatal  to the defence of  this cause.
For several years after the assignment, the assignee was kept in
ignorance of this asserted debt on account; a circumstance which,
connected with the insolvency of *Humphrey*, renders the transac-
tion suspicious, and gives it a collusive character, as well as the
operation of a waiver of the right of offset.   The defendant has
not  in his own conduct, displayed that fairness and equity on
his part, which entitles him to establish his claim as an equitable
one against the plaintiff.   We are all of  opinion that the excep-
tions must be overruled; and the judgment of the Court of Common
Pleas affirmed.