J us tico Foim delivered the opinion of the court. The Chief Justice having been counsel for Bispham, did not sit. on the argument of the cause.
The defendant moves to set aside a judgment entered against him in this case, on bond and warrant of attorney, upon an allegation that the bond was obtained from Jiim by fraud, and for a consideration that has failed. The bond and warrant were given originally to Benjamin McGinnis, and assigned by him to James *Barrow, the plaintiff. [*114 *136 It appears that on purchasing a fishery from B. McGinnis at the price of $2,000, the defendant paid one-third of the consideration in cash, and gave him one bond and warrant for $667, and another bond and warrant for $666, for the residue. Judgment was entered up on the former bond more than seven years ago; on the latter, which the defendant moves to set aside, judgment was entered the 22d of November last. The title, instead of being a good one to the fishery so purchased, turns out to be utterly defective and worthless. It was founded on a sale of it as the property of John Rice, made by the collector of the revenue, for non-payment of the direct tax to the United Stares. Reuben D. Tucker and Evan Evans, the purchasers at that sale, conveyed it to B. McGinnis, who sold it to the defendant. It clearly appears that the collector did not pursue the course enjoined by the act of Congress for selling property for taxes, and for that reason the sale was void, and the title under it wholly failed. A person invested with special power to sell, must pursue with precision the course prescribed by law, or his act w'ill be invalid. This was pointedly determined in the case of Thatcher v. Fletcher, 6 Wheat. 119, and the plaintiff’s counsel did not dispute the total failure of the title.
But the fraud imputed to B. McGinnis, his counsel strenuously denies. It appears that Tucker and Evans, who had made numerous purchases of land at the collector’s sales, sold out their interest in those purchases to Benjamin McGinnis, before they had obtained deeds from the collector. When the time arrived for making them out, Tucker, Evans and McGinnis attended on the collector, and prevailed on him, as the number of deeds tvas not less than 160, and McGinnis in a great hurry to get away, to employ .several pxtra clerks, whom they named and procured, but whom the collector paid, to expedite the business. The collector laid before them the lists, returns, advertisements, receipts for purchase money, and certificates of non-redemp *137 tion, and they were to fill up each deed from its proper •documents. These clerks, and the parties, (McGinnis among the rest), were industrious in the investigation and scrutiny of the documents. The; collector, reposing confidence in the accuracy of the clerks and parties, executed the deeds, after they were filled up, without reading or collating them with the records. It now appears that *every document respecting this fishery, [*115 was equivocal, erroneous, or had been feloniously altered. John Rice, the owner of the fishery, and non-resident in the district, against whom an individual assessment had been made out, is written, as respects the letters of his surname, in very equivocal characters. They might be taken for Riee, if the same, or some other officer, had not endorsed it John Rinn; and if the name be Rinn, a sale ought not to have been made of the property of Riee. After this, the name, in all the subsequent proceedings required by act of •Congress for information to non-residents, got changed permanently into Rine. It is John Rine, in the general collection list; in the notice published in the newspapers ; in the original list of sales ; in the return of sales made to the clerk of the district court; in the collector’s receipt to Tucker and Evans for the purchase money ; and in the certificate endorsed thereon of non-redemption by the clerk of the district court. So that whoever examined these documents must have been conscious that John Riee had .received no legal notice of the proceeding, and that the collector had no right to convey his interest in the fishery. The collector, after receiving the purchase money, was to. wait, by act of Congress, before he made any deed, one year, to give the owner an opportunity to redeem ; and upon being certified, at the expiration of two years, by the clerk of the district court, that no redemption had taken place, he was to make a deed to the purchaser. In the body of the collector’s receipt for the purchase money of .this fishery, there has been a criminal alteration of the *138 name of Bine into Bice ; it is demonstrably plain, and was-evidently done to justify or induce the collector to make out a deed for the property of John Bice, though he was not the-person named in the •documents. The alteration was made-not more than five days before the collector made out the deed; but he cannot tell who did it, nor who was privy to it, though he swears it has been altered. While B. McGinnis was treating for the sale of the fishery to Bispham, he declared his belief that the title under the collector’s deed wa3 a good one. A Mr. Staughton, who was interested with him in the property, declared in the presence of McGinnis, that they had examined all the proceedings of the collector, and that they had found them - all to be regular and according to law.
Whether these facts are sufficient evidence that McGinnis*116] knew *the collector’s proceedings not to be regular; or that he asserted their regularity, knowing them to be otherwise, in order to impose a defective title on Bispham ; or that he was concerned in, privy to, or cognizant of the alteration of the collector’s receipt, I do not consider myself bound to determine, nor even to intimate, an opinion. But I am dear that the court ought to refer these matters to-the determination of a jury, if we may legally do so.
The counsel for the plaintiff insists, that no fraud between the original parties can be set up against James Barrow, the assignee: who became a bona fide holder, without notice, for valuable consideration, and against whom no fraud is proved or imputed. In support of this doctrine he cites Somes v. Brewer, 2 Pick. 284; Fletcher v. Peck, 6 Cranch,. 133; and Parker v. Patrick, 5 T. R., 175. The two former cases, instead of relating to bonds, or to a chose in action, refer exclusively to transfers of real estate. If one obtain a deed for land by fraud and imposition on the owner, and afterwards convey the same to a purchaser, having no notice of the fraud, such purchaser will hold against the original owner. The reason of those cases is, that the title *139 to land, which passes by solemn livery of seizin or conveyances, amounting to it, would be universally endangered, if fraud might be set up in any remote link of a long chain of title, (or succession of owners) through whom it had passed in coming to the last purchaser. The cases have nothing to do with the assignment of a chose in action, which is governed by widely different rules. The case of Parker v. Patrick, only shews that goods, taken by a pawn-broker in the way of his trade, in market overt, and for valuable consideration, cannot be recovered back by the former-owner ; from whom they were not stolen, but obtained by false pretences. By the common law goods are assignable; but bonds are not; and all reasoning from one to. the other is necessarily fallacious. The law touching the assignment of bonds, and the rights of an assignee, is settled by a multitude of cases. Thus in 1 JSq. Ca. ab. 44, pi. 4, it is laid down, that an assignee of a bond must take it subject to the same equity that it is in the hands of the obligee. In Davis v. Austin, 1 Vez. jun. 247, the Lord Chancellor says, “a purchaser of a chose in action must always abide by the case of the person from whom he buys, that *1 take to be an universal rule.” In Wheeler v. [*117 Hughes, 1 Led. 23, the court says, the assignee of a bond takes it at his own peril, and stands in the same place as the obligee, so as to lot in every defalcation which the obligor had against the obligee at the time of the assignment or notice of it. 2 Yeates 23, is to the same effect. So in Clute v. Robinson, 2 Johns. 595. Clute gave a bond for §1,200 to Rawlins, and took back a separate agreement that the bond should be surrendered up on his performing certain conditions. Rawlins assigned the bond to Robinson. Kent, Chancellor, said “ there can be no doubt that Robinson took bis assignment subject to all equities which attached to it in the hands of Rawlins.” Our statute, Rev. Laws, 305, making bonds assignable and enabling assignees to sue in their own names, instead of shaking this doctrine,. *140 serves to confirm it; it allows all just set-offs and discounts prior to the assignment. In the case of Garretsee v. Van Ess, 1 Pen. 23, this court decided, that the assignment of a "bond transferred no more interest than the assignor had in it at the time. Hence it appears that every defence is open against James Barrow the assignee, that the defendant could have had against Benjamin McGinnis.
But the plaintiff’s counsel insists that fraud cannot be -set up at law in bar of a bond. For this, he cites Vrooman v. Phelps, 2 Johns. 177; Parker v. Parmele, 20 Johns. 130; Bunn v. Guy, 4 East. 200; and Page v. Trufant, 2 Mass. 159; which cases admit that bond entered into upon considerations illegal, immortal, or contrary to public policy, may be set aside at law, but for no other species of fraud. On the other hand, it was liolden in this court, in the case of Mason v. Evans, Coxe’s Rep. 182, that fraud of any kind may be pleaded at law in bar of a bond. But if this court possesses a general equitable jurisdiction over judg- ' ments entered on bonds by warrants of attorney, the question whether issue may be taken in a course of pleadings at common law on the consideration of a specialty, or whether the obligor is estopped by the solemnity of his own deed,
■ cannot possibly arise; for, admitting for argument sake -only, that it cannot be done at law, the right of doing it in .a court of equity, is perfectly familiar ; and that courts of law have exercised an equitable jurisdiction over judgments entered by warrants of attorney, where there was no opportunity of making defence, cannot, I think, be doubted or *118] *denied. I Reed v. Bainbridge, 1 South. 351, on an allegation that the bond was obtained by fraud, the court did exactly what the chancellor might have done; they offered the purchaser, though he was a third person, .an issue to try the matter of fraud. Justice Eossell, who insisted on this equitable jurisdiction, referred to Coxe’s Pep. 3 and Penn. Pep. 689, as precedents in favor of it. ;See also Frazier v. Frazier, 9 Johns. 80; Cook v. Jones, *141 Cowp. 727; Doug. 186; 2 Archb. Dr. 14. In all these-cases the equitable jurisdiction' of the court, was both asserted and exercised; and such a jurisdiction can take cognizance of- every kind of fraud by which a bond can be improperly obtained. Courts of law have a concurrent jurisdiction with courts of equity, to relieve against fraud; and though they have not the powerful means of investigating fraud by bill and answer, yet where it can be tried by a simple issue, it is so mucli more expeditions, so, much cheaper, and better for both parties, that long as this jurisdiction has been exercised, it has never been a subject of complaint, either in the books or elsewhere. If, therefore,, there be in this case any such fraud, or partial or total-failure of consideration, as would he grounds for relief in a court of equity, and this court is able to enquire into and grant such a relief in a summary way, it has a just right to do so.
But it' is denied, in this case, that there is any failure of consideration, either partial or total, because Mr. Bispham has obtained everything he contracted for, which was the right and title of McGinnis, be- it more or less, to this fishery, and a court of equity would afford him no relief on this ground. I consider this objection as being well founded. This contract is no longer executory; it was executed more than eight years ago by the delivery of a deed of conveyance and payment of the consideration in cash or by the delivery of solemn instruments for the residue. We must leave the title as it is, and where it is, I do not know an instance where a court of law, exercising this summary equitable jurisdiction has decreed the title deeds for real estate to be delivered up, or reconveyances to be executed. Such is peculiarly the province of a court of equity. According to the terms of the deed Mr. McGinnis - neither covenants for the goodness of the title nor to warrant or defend it; he conveys it such as it is, and Mr. Bispham takes it as it is. If we had power to go back of *the deed, and look into the prior agreement, with [*119 its attendant circumstances, it would not appear that. *142 McGinnis was to give a good, title, or that Bispham contracted for one. The agreement was to give a good and sufficien deed. Now a good deed means a good deed, not a good title. In Gazly v. Price, 16 Johns. 267, a good deed was held by the whole court to mean a conveyance sufficient to pass whatever right the party had in the lands without .warranty or personal covenants, and they said it had there-tofore been so decided in Van Epps v. the Corporation of Schenectady, 12 Johns. 442. In Parker v. Parmele, 20 Johns. 130, they reviewed the point with much care, together with the preceding cases, and came to the same conclusion. As the- words “ good and sufficient deed ” have a meaning' in themselves, which is neither doubtful nor ambiguous, we have no right, by any known rules of construction, to depart from the plain meaning of the word “ deed,” and .stretch it to mean title, which is of so much larger and more comprehensive import, unless there was something else in the same instrument, or in the attendant circumstances, to demonstrate that the parties by the word deed meant and intended title. But there is nothing in the other parts of the instrument to lead to such a construction, and the attendant circumstances hang heavily the other way. According to the opening in this case, Mr. Bispham did not want a title to the fishery, for he had it already; all that he wanted was to remove out of his way this pretended claim of John Rice, that gave him annoyance; audit was this very claim of John Rice, and neither more or less, that McGinnis pretended either to own or to sell. It is observable that the words “ owned by ” John Rice are stricken out of the agreement; either because Mr. Bispham would not allow him to be the owner, or because Mr. McGinnis would not aver him to be such, and in either way it shews that Rice’s claim, be it worth more or less, was all that the parties intended. There is no case in which the word deed, without more, has been construed to mean title. In that of Clute v. Robinson, 2 John. 595, in equity, there was some *143 thing more than deed, for Chito acknowledged in his answer that by deed he meant title, and because his title was incomplete that he obtained time to get it perfected. So that the construction there taken was not by force of construction, but by the assent of parties. But in this case neither the fact nor the law authorizes *us to say that McGinnis [*120 was to give a good and sufficient title.
Then the only ground legally offered for opening this judgment is the ground of fraud, and that is one which calls loudly for investigation. The collector has executed a deed of conveyance for John Rice’s property, contrary to the regulations of the act of Congress, and has founded his act in a great measure upon the criminal alteration of an important document. If Mr. McGinnis was party or privy to, or cognizant of, such alteration, or falsely professed a belief that the proceedings of the collector were regular, knowing them at the time to bo otherwise, for the purpose of imposing a defective title on the purchaser, to defraud him of his money, this court can, and ought, to relieve against it, as far at least, as to set aside the present judgment and execution.
Let an issue therefore be made up between these parties, under the direction of one of the justices of this court, in such manner that the defendant, if he is able, may shew on the trial, that the obligation given by him to Benjamin McGinnis, on which judgment was entered in this court the 22d day of November, 1827, in favor of James Barrow, assignee thereof, was obtained from him by fraud; and lot .such issue be tried at the next Circuit Court to be holden for the county of Hunterdon ; and let all proceedings on the said judgment and execution stay till the further order of this court.
Note. The following is the form of the rule entered in pursuance of the foregoing opinion of the court; and also the feigned issue made up under the direction of his honor Justice Fobd.
*144 It appearing to tlie court that the bond on which the-judgment in this case was entered up by virtue of a power of attorney, accompanying the same, was given by the said Joseph M. Bispham to Benjamin McGinnis, in part payment of the purchase money, on a sale and conveyance to him the said Joseph M. Bispham, by the said Benjamin McGinnis, of" a tract of land and premises, called Oinnaminson Fishery.
And it being alleged on the part of the said Joseph M. Bispham, that in .the said sale of said premises to him, by the said Benjamin McGinnis, he the said Benjamin McGinnis defrauded and deceived him, and that the said bond was obtained from him by said Benjamin McGinnis by means of the said fraud.
*121] *For the purpose of trying the said charge of' fraud, it is ordered that a feigned 'issue be drawn and prepared under the direction of a justice of this court, to be tried at the next Hunterdon Circuit; the party failing to pay costs to the prevailing party. It is further ordered, that all proceedings be staid on the above judgment and execution, till the further order of this court.
On motion of G. Wood, Deft’s. Atty.
Hunterdon, ss. Joseph M. Bispham complains of James Barrow in custody, &c., for that, whereas on the first day of March, in the year of our Lord eighteen hundred and twenty-eight, at Flemington, in the county of Hunterdon, a certain-discourse was moved and had, between the said Joseph MBispham and the said James Barrow, of and concerning, a sale made by one Benjamin McGinnis to the said Joseph M. Bispham, of a tract of land and fishery, situate in the-township of Chester, county of Burlington, and State of How Jersey, commonly called Oinnaminson Fishery, for the sum of two thousand dollars; the deed for which was executed*’ and delivered by the said Benjamin McGinnis, and Sarah his wife, to the said Joseph M. Bispham, bearing date the-thirtieth of September, eighteen hundred and nineteen, and of and concerning a bond executed by the said Joseph M.. Bispham, to the said Benjamin McGinnis, by which he- *145 bound liimself to tho said Benjamin McGinnis, in tho penal' sum of thirteen hundred and thirty-two dollars, to bo paid-to the said Benjamin McGinnis, his certain attorney* executors, administrators or assigns, bearing date the first day of October, eighteen hundred and nineteen, conditional to pay' the said Benjamin McGinnis the sum of six hundred dollars, with legal interest, on or before the first day of October, eighteen hundred and twenty-one, it being part of the consideration money of the said sale or conveyance.
And upon that discourse, a question then and there arose and was debated by and between the said Joseph M. Bispliam and the said James Barrow, "whether the said bond was obtained from him the said Joseph M. Bispham in part payment of the said consideration of the said sale and conveyance, by the said Benjamin McGinnis, (and others in collusion with him), by fraud, covin and misrepresentation; and the said Joseph M. Bispham, then and there asserted and affirmed, that the said bond was obtained from *him [*122 as aforesaid by the said Benjamin McGinnis, (and others in collusion with him), by fraud, covin and misrepresentation; which said assertion and affirmation of the said Joseph M. Bispliam, the said James Barrow, then and there wholly' denied and asserted to the contrary thereof.
And thereupon afterwards, to wit: on the same day and’ year aforesaid, at Flemington aforesaid, in consideration that' the said Joseph M. Bispham, at the special instance and-request of tho said James Barrow, had then and there paid him the sum of two hundred dollars, lawful money of tho United States, he the same James Barrow, then and there undertook and faithfully promised the said Joseph M. Bispham, to-pay him the sum of two hundred dollars like lawful money as-aforesaid, in case the said bond was obtained from him as aforesaid by the said Benjamin McGinnis, (and others in collusion with him), by fraud, covin and misrepresentation.
And the said Joseph M. Bispham, in fact saith, that the said bond was obtained from him as aforesaid, by the said *146 Benjamin McGinnis, (and others in collusion with him), by fraud, covin and misrepresentation; to wit: on the' said first day of October, in the year of our Lord eighteen hundred and nineteen, at Flemington, aforesaid; whereof the said James Barrow afterwards, to wit: on the first day of March, in the year of our Lord eighteen hundred and twenty-eight, at Flemington aforesaid, had notice.
Nevertheless the said James Barrow, not regarding his said promise and undertaking by him, in form aforesaid made, has not paid said Joseph M. Bispham, the said sum of two hundred dollars, or any part thereof, although so to do, the said James Barrow afterwards, to wit: on the day and year last aforesaid, and often afterwards at Flemington aforesaid, was by the said Joseph M. Bispham requested; but the same to him to pay, he the said James, has hitherto altogether refused and still doth refuse, to his damage of one hundred dollars, and thereupon he brings suit.
And the said James Barrow, by Philemon Dickerson, his' attorney, comes and defends the wrong and injury, when, &c., and says that the said Joseph M. Bispham, ought not to have and maintain his aforesaid action thereof against him, because he says, that though true it is, the said discourse in the plaintiff’s declaration mentioned, was moved and had, *123] by and between the said Joseph *M. Bispham, and him the said James Barrow, whereon the question did arise as aforesaid, and he the said James did undertake and promise in manner and form as the said Joseph M. Bispham hath, about in that behalf alleged ;
Nevertheless for plea in this behalf, the said James Barrow says, that the said bonds in the plaintiff’s declaration mentioned, was not obtained from him as aforesaid by the said Benjamin McGinnis (and others in collusion with him) by fraud, covin and misrepresentation, in manner and form as the said Joseph M. Bispham hath above, in this behalf alleged; and of this he puts himself upon the country, &c.
And the said Joseph M. Bispham doth the like, &e.