JAMES H. BENNETT et al., Respondents, *v.* ANDREW H. CUL-
VER, Appellant.

In January, 1853, B., being the owner of certain real estate, entered into a
contract with a corporation, the "Washington Cemetery," by the terms
of which, in consideration of $10 and the "premises" thereinafter
stated, B. "granted, sold" and "conveyed" to said corporation
"and assigns forever" the said real estate. The "premises" re-
ferred to in the consideration clause were declared to be among
others, that the corporation shall pay to B., or his assigns, during
his life, or to "his assigns * * * heirs, legatees, executors or adminis-
trators after his decease," a specified sum for each lot sold by the corpo-
ration as a burial place, which sales were limited to a fixed rate; B.
to be "entitled to the grass, wood, timber and other produce of the soil
of all parts of said land which may remain unsold * * * until all
such land shall be sold in lots as aforesaid, and have interments therein."
In case of non-fulfillment by the corporation of any of the "premises,"
it was declared that the right of soil of all lots unsold shall revert to
B., his heirs, etc., such reversion, however, not to prejudice the right of
the corporation to sell, in conformity with the "premises." Following
this was an *habendum* clause by which the corporation was "to have and
to hold the * * * above-described premises with the appurtenances
* * * forever, in conformity to the premises" thereinbefore stated.
Then followed a covenant on the part of B. to the effect that the corpo-
ration shall quietly "possess and enjoy" the said land "subject and in
conformity to the 'premises' * * * stated and agreed upon." The
said corporation never sold any lots as contemplated, and no portion
of the lands was used for cemetery purposes. B. until his death
and thereafter his heirs, continued in possession of the land, cultivating
and using the same for agricultural purposes until March, 1880, when
defendant, who claimed under a conveyance upon sale on execution
against said corporation, took possession, excluding B.'s heirs therefrom.
In an action of ejectment by said heirs, *held*, that while the agreement
contained express and technical terms conveying the fee, yet it appeared
by the whole thereof, that this was intended to be merely conditional;
that the conditions are not subsequent, but upon their performance the
grantee's right depends; and, as there had been no performance, the cor-
poration had no interest which could be taken on execution; that de-
fendant therefore acquired no title and plaintiffs were entitled to recover.

(Argued October 16, 1884; decided November 25, 1884.) .

APPEAL from order of the General Term of the Supreme
Court, in the second judicial department, made September 12,

1882, which reversed a judgment in favor of defendant, entered upon a decision of the court on trial without a jury.

This was an action of ejectment.

The plaintiffs sought to recover possession of certain land described in the complaint as situated in the towns of New Utrecht and Gravesend, in the county of Kings, upon which they alleged the defendant on the 28th of March, 1880, wrongfully entered and "withholds from them." The answer denies all the allegations of the complaint, and avers that on the day named, and for a long time prior thereto, the defendant was and now is owner and in possession of the land. On the trial it appeared that one James A. Bennett became the owner of the land in 1825, and on the 25th day of January, 1853, joined with the trustees of the Washington cemetery in the execution of an agreement relating to it. The instrument by its terms is executed between Bennett, as party of the first part, " and the corporation known as the Washington cemetery, as party of the second part ;" it recites that Bennett, "in consideration of the sum of $10 (and the *premises* hereinafter stated), lawful money of the United States to him in hand paid " by the party of the second part, " has granted, sold and conveyed, and does grant, sell and confirm unto them and their assigns forever " certain described real estate which is conceded to be that in question, " containing one hundred acres of land and woodland," and then declares that the "*premises*" referred to in the consideration clause, are that the said party of the second part shall pay half-yearly, from the date of this conveyance, to the party of the first part, or his assigns, during his life-time, or to his attorney, agent, assigns, or to his heir or heirs, legatees, executors or administrators after his decease, " the sum of $40 for each and every lot of four hundred square feet of land, and in proportion for a larger or smaller lot, which the party of the second part shall dispose of in any manner whatsoever as a place for the burial of the dead, and $3 for each grave opening until all the land described in this deed, or such part of it as may remain after the satisfaction of an existing mortgage thereon, shall be sold for cemetery purposes only ; and the

party of the first part, his assigns, heirs or legatees, shall be entitled to the grass, wood, timber and other produce of the soil of all parts of said land which may remain unsold in conformity to the conditions of this deed, until all such land shall be sold in lots as aforesaid and have interments therein. And the party of the second part agrees with the party of the first part that no lot of four hundred square feet shall be sold for less than $80, or in proportion for more or less land, unless the trustees shall deem a less sum than $40 per lot sufficient for improving the ground and for other purposes than the purchase-money; and it is further agreed between the parties to this instrument that no interments shall be made in that part of the land hereby conveyed lying in the town of New Utrecht until all that part of the land lying in Gravesend shall have been sold and interments made therein; and that in case of the non-fulfillment by the party of the second part of any of the premises on which this conveyance is given, the right of soil of all lots without interments shall revert to the party of the first part, his heirs, assigns, executors, administrators or legatees, but which reversion shall not prejudice the right of the cemetery or corporation to sell said land in a just and honorable manner in conformity to said premises according to the true intent of this conveyance * * * * to have and to hold the above * * * * described premises with appurtenances, unto the said party of the second part and assigns forever, in conformity to the *premises* hereinbefore stated."

Then follows, among others, a covenant "that the said party of the second part and assigns shall quietly possess and enjoy the 'said land,' subject and in conformity to the premises hereinbefore stated and agreed upon."

In conclusion it recites that "the parties to these presents have hereunto interchangeably set their hands and seals," and is executed by Bennett and also by several persons, who, in the acknowledgment of its execution or ratification, as by the paper it is termed, are described as "trustees of the Washington cemetery, the party of the second part," and they therein declare that "each and all accept and ratify the foregoing conveyance with

all its premises, conditions, stipulations and covenants on behalf of the said corporation."

It was found by the trial court that James A. Bennett died in 1863, leaving the plaintiffs his only children and heirs at law; that at the time of the execution of the above instrument he was in possession of the premises, and continued in possession of them until his death, "cultivating and using the same for agricultural purposes, and taking and using the grass, wood, timber and other produce of the soil thereof"; and after his death the plaintiffs as his heirs continued to occupy, cultivate, etc., until on or about the 27th day of March, 1880.

It was also found that, "since the conveyance made by James A. Bennett to the Washington cemetery, the premises described in the complaint, nor any part thereof, have been used or sold for cemetery purposes as a place for the burial of the dead."

The trial court also found that the Washington cemetery was a corporation duly organized under the laws of the State of New York, and by virtue of the instrument above recited, became and was the owner in fee of said land, until the 24th day of October, 1877, when it was sold to the defendant under executions issued upon judgments against the cemetery association, and no redemption having been had, was conveyed to him November 26, 1879, and that he thereupon became its owner in fee-simple and entitled to the possession thereof, and "that on or about said 27th day of March, 1880, and while the plaintiffs were in the possession and using the premises described in the complaint, the defendant" removed them "and took possession thereof, and has ever since excluded them therefrom."

The trial court dismissed the complaint.

*John H. Bergen* for appellant. Conditions subsequent, in deeds especially when relied on to work a forfeiture, must be created by express terms or clear implication, and are construed strictly. (2 Washb. on R. P. [4th ed.] 7; *Gadbury* v. *Sheppard*, 27 Miss. 203; *Ludlow* v. *N. Y. & H. R. R.*, 12 Barb. 440; *Merrifield* v. *Cobleigh*, 4 Cush. 178, 184; *Broadstreet* v. *Clark*, 21 Pick. 389; *McWilliams* v. *Nisly*, 2 S. &

R. 513; *Martin* v. *Ballou*, 13 Barb. 119; *Hoyt* v. *Kimball*, 49 N. H. 327.) The deed in suit is not one upon condition. The "premises" are expressly made a part of the "consideration," and amount to nothing more than a covenant or agreement on the part of the cemetery to pay one-half of the purchase-money of each lot sold, and $3 for each grave opened, upon a half-yearly accounting. Such an agreement is not a "condition." (*Laberee* v. *Carleton*, 53 Me. 213; *Rawson* v. *Uxbridge*, 7 Allen, 125; *Ayer* v. *Emery*, 14 id. 69; *Packard* v. *Ames*, 16 Gray, 327; *Board of Education, etc.*, v. *Trustees*, 63 Ill. 204.) Ordinarily the failure of the consideration of a grant of land, or the non-fulfillment of the purpose for which a conveyance by deed is made, will not of itself defeat an estate. (*Rawson* v. *Uxbridge*, 7 Allen, 129; *First Methodist* v. *Old Columbia*, 29 Alb. L. J. [Penn. Sup. Ct.] 415; *Laberee* v. *Carleton*, 53 Me. 213; *Ayer* v. *Emery*, 14 Allen, 69.) The restrictions in the deed to the Washington cemetery are void. (*DePeyster* v. *Michael*, 2 Seld. 492, 493; *Oxley* v. *Lane*, 35 N. Y. 346, 347; *Van Rensselaer* v. *Ball*, 19 id. 102, 103; *Nicoll* v. *The N. Y. & E. R. R.*, 12 id. 132, 138; *Fremont* v. *U. S.*, 17 How. 542; *U. S.* v. *Reading*, 18 id. 1; *B. P. Com.* v. *Armstrong*, 45 N. Y. 234; art. 1, § 15, Const. 1846; 4 Kent's Com. 131; *Littlefield* v. *Mott*, 14 R. I. [29 Alb. L. J.] 487.) When the grant and *habendum* are repugnant, the latter yields to the former. (2 Washb. on R. P. 691; 4 Cruise's Dig. [Greenl. ed.] 273, marg. p.; Shep. Touch. 129; 14, 15 Law Lib. [N. S.] 131; *Stuckely* v. *Butler*, Hoffm. 300; 2 Prest. on Abst. of Titles, 193; 10 Bac. on Abs. 535; *Gadbury* v. *Sheppard*, 27 Miss. 203; *Powers* v. *Remsen*, 70 N. Y. 310; *Van Rensselaer* v. *Ball*, 19 id. 103; *De Peyster* v. *Michael*, 2 Seld. 492, 494.) The "premises," as they are called, contained in the deed from James A. Bennett to the Washington cemetery were independent covenants or agreements, and not conditions of the grant. (Benjamin on Sales [2d ed.], 451; *Rawson* v. *Uxbridge*, 7 Allen, 125; *Laberee* v. *Carleton*, 53 Me. 213; *Underhill* v. *S. R. R. Co.*, 20 Barb. 455; *Finley* v. *King's Lessees*, 3

Peters, 346; *Ayer* v. *Emory*, 14 Allen, 69; *Packard* v. *Ames*, 16 Gray, 327; *Nicol* v. *N. Y. & E. R. R. Co.*, 12 N. Y. 130; *Merrill* v. *Emery*, 10 Pick. 507, 508; *People* v. *Manning*, 8 Cow. 297; *Holland* v. *Bouldin*, 4 Mon. 147; *Brewster* v. *Kitchell*, 1 Salk. 198; *Anglesea* v. *Church-Wardens*, 6 Q. B. 114; Burton on Real Prop. 854; *Lear* v. *Leggett*, 1 Russ. & M. 690; *Matcheson* v. *Hewson*, 8 Term R. 517; *Smith* v. *Putnam*, 3 Pick. 221; *Yarnold* v. *Moorehouse*, 1 Russ. & M. 364; 1 Smith's Lead. Cas. [1st Am. ed.] 66; *Lynde* v. *Hough*, 27 Barb. 415; *Shea* v. *Hall*, 13 Ves. 404; 1 Washburn on Real Prop. [2d ed.] 476, 477, 480; *Okley* v. *Lane*, 35 N. Y. 346 *et seq.; Trustees* v. *Lynch*, 70 id. 448 *et seq.;* Washburn on Easements, 571, marg. p.; *Woolworth* v. *Payne*, 74 N. Y. 196; *Towle* v. *Remsen*, 70 id. 310; *Pierce* v. *Keator*, id. 419.) An involuntary sale upon execution issued upon a judgment against the Washington cemetery is not a breach of the "premises" (by whatever name they may be called) contained in the deed, not to sell for other than cemetery purposes, and providing for a forfeiture, etc., in case of breach. (*Jackson* v. *Corliss*, 7 Johns. 531; *Jackson* v. *Kipp*, 3 Wend. 230; *Jackson* v. *Silvernail*, 15 Johns. 279; *Livingston* v. *Stickles*, 7 Hill, 236; *Overbagh* v. *Petre*, 8 Barb. 35; affirmed, 2 Seld. 510; *Jewett* v. *Jewett*, 16 Barb. 150; *Riggs* v. *Purcell*, 66 N. Y. 201; *Baley* v. *Ins. Co.*, 80 id. 21; *Rector of Christ P. E. Church* v. *Mack*, 93 id. 488; *Brewster* v. *Kitchell*, 1 Salk. 198; *Anglesea* v. *Church-Wardens*, 6 Q. B. 114; *Lear* v. *Leggett*, 1 Russ. & M. 690; *Yarnald* v. *Moorehouse*, id. 364; *Matcheson* v. *Hewson*, 8 Term. R. 47; *Smith* v. *Pulman*, 3 Pick. 221; 1 Smith's Lead. Cas. [1st Am. ed.] 66; 13 Ves. 404.) Even if the "premises" can be held to be valid, still a breach, in order to be available, must be by a grantee's own act, and not one occasioned by a sale under judgments obtained by third parties. (*Baley* v. *Homestead F. Ins. Co.*, 80 N. Y. 22, 23.) There is no reservation of the possession of the land contained in the "premises" in the deed. (*Pierce* v. *Keator*, 70 N. Y. 419; 2 Washburn on Real Prop. [2d ed.] 105, par. 16, 17; *Humphries* v. *Humphries*, 3 Ired. N. C.

Law, 362; *Cauldwell* v. *Fulton*, 31 Penn. 483; *Clement* v. *Youngman*, 40 id. 341.) The action of ejectment being a possessory action, without the right to exclusive possession it will not lie. (*Humphries* v. *Humphries*, *supra;* *Cauldwell* v. *Fulton*, 31 Penn. 483; *Clement* v. *Youngman*, 40 id. 341.)

*Thomas E. Pearsall* for respondents. A reservation is construed by the same rules as a grant. (*French* v. *Carhart*, 1 N. Y. 96.) A grant or reservation of the right to the beneficial use, to the rents and profits, to the income, to the avails, or the annual products of the land, is an effectual grant or reservation of an estate in the land of the same duration as the right. (*Emery* v. *Chase*, 5 Greenl. [233] 198; *Jennings* v. *Carboy*, 73 N. Y. 236–7; *Jackson* v. *Swart*, 20 Johns. 85; *Mitchener* v. *Atkinson*, 63 N. C. 585; *Thompson* v. *Schenck*, 16 Md. 194; *Andrews* v. *Boyd*, 5 Greenl. [199] 169; *Butterfield* v. *Haskins*, 33 Me. 392; *Earle* v. *Grim*, 1 Johns. Ch. 499; *Mott* v. *Coddington*, 1 Abb. [N. S.] 296–7; *Stewart* v. *Garnet*, 3 Sim. 389; *Mannox* v. *Greener*, L. R., 14 Eq. Cas. 462; 4 Kent's Com. 536; 3 Jarm. on Wills [5th Am. ed.], 434, note, 16, 33–34, note; 2 Redf. on Wills, 329; *Craig* v. *Craig*, 3 Barb. Ch. 94, 95; Rev. Stat., Uses and Trusts, § 47.) The interpretation put upon a deed by the parties to it, by their subsequent acts and conduct respecting the land, is entitled to great weight when the meaning of the deed is called in question. (*French* v. *Carhart*, 1 N. Y. 96; *Livingston* v. *Tenbroeck*, 16 Johns. 23, 24.)

DANFORTH, J. Both parties claim under James A. Bennett. It is conceded that the right of each depends upon the true construction of the paper above set out. As to that the courts have differed. We agree in the conclusion reached by the General Term. It accords with the well-settled rule that the construction of written instruments should be as near to the minds and apparent intent of the parties as possible (*French* v. *Carhart*, 1 N.Y. 96), and complies with the statutory declaration

that, "In the construction of every instrument creating or conveying, or authorizing the creation or conveyance of, any estate or interest in lands, it shall be the duty of courts of justice to carry into effect the intent of the parties, so far as such intent can be collected from the whole instrument, and is consistent with the rules of law." (1 R. S. 699, § 2, Edmonds' ed.)

It is plain, we think, that the sole object of the agreement was the creation and establishment of a cemetery, of which the grantor should be, in the language of the parties, " the first and only founder," and with that end in view its interpretation is not difficult. It is true there are, as the appellant's counsel contends, express and technical terms by which the fee is granted to the cemetery association, but on looking at the whole instrument we find that it was not the grantor's intention that it should be absolute, but merely conditional. In the first place its extent is so defined and restrained that no right of possession vests in the corporation until a sale according to the conditions of the agreement. They are not subsequent conditions, but upon their performance the grantee's right depends. Then there is the express mutual covenant not confined to the grantor, but running to him, his assigns, heirs or legatees, that they shall be entitled to the grass, wood, timber and other produce of the soil of all parts of the land which may remain unsold in conformity to those conditions. Another provision indicates the understanding of the parties as to the effect of the instrument. Although in a certain event the right of soil even is to revert to the grantor, his heirs, etc., so that it shall be added to the right of possession, it is declared that such reversion shall not prejudice the right of the cemetery to sell the land " in conformity to said premises according to the true intent of this conveyance."

Again the agreement for consideration is executory, depending entirely upon the actual sale of lots for interments, and accompanied by no personal obligation on the part of the grantees, except to account to the grantor and his assigns or heirs, every half year, at a fixed rate, below which they were not

permitted to go, for the lots sold. No other consideration is to be paid, and by express agreement and as one of the conditions, the purchase-price is to be derived from the sale of the land and paid over to the grantor.

In the next place there is the explicit language of the *habendum* clause defining the estate and the use for which the grantees shall have it, and so limiting it that the cemetery " shall have and hold " the lands granted only " in conformity to the premises " thereinbefore stated, and to which we have referred. So the quiet enjoyment which is covenanted for is declared to be subject and " in conformity to the same premises."

Nor is there any circumstance in the case which should induce the court to regard these conditions, or " premises " as they are styled, with disfavor, or refuse to give effect to the evident intention of the grantor as expressed, or even implied, in them. Whether we regard, therefore, his purpose in executing the instrument, or his express words, the legal estate in the cemetery must be deemed limited to such an interest only as would enable it to carry into effect his intention. So far this has not been done. No part of the property has been sold or used as a place for the burial of the dead, and going further, the learned counsel for the appellant declares that " the cemetery association has not attempted to sell it, nor to get possesion at all." The defendant has succeeded in doing both, but unlawfully, for his debtor had no interest in the property to which his judgments could attach, and consequently none which could be taken on execution.

As the decision of the court below is to that effect, it should be affirmed, and the plaintiffs have judgment absolute according to the stipulation.

All concur.

Order affirmed, and judgment accordingly.