(10 App. Div. 550.)

BENNET v. BENNET et al.

(Supreme Court, Appellate Division, Second Department. December 8, 1896.)

1. VENDOR AND PURCHASER — TENDER OF PERFORMANCE BY VENDEE — SUFFICIENCY OF EVIDENCE.

In an action against executors for specific performance of a contract for the sale of land to plaintiff, executed by the testator, it appeared that a deed was to be given, and the price paid, at a certain lawyer's office, on a specified day; that plaintiff attended at the time and place specified, and demanded a deed; and that no one appeared on behalf of the vendor or his successors. Plaintiff testified he had with him, and then and there produced, in bills, the cash then payable by the terms of the contract, and he was supported by two other witnesses. The lawyer testified positively that no money was tendered to him at that time. *Held,* that a finding of a referee that plaintiff was ready and offered to perform the contract at the time and place specified in it should not be disturbed, though the testimony of the person who it was claimed provided the cash was suspicious, improbable, and almost incredible.

**2. SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE.**

Where neither party to a contract for the sale of land has tendered strict compliance with its terms, the vendee is not barred of his rights under the contract without notice requiring performance in a specified time; and, in default of such notice, he is entitled to a specific performance, in the absence of evidence that the contract was unfair or unconscionable when made, or that change of circumstances renders its specific performance inequitable.

**3. SAME—LACHES OF COMPLAINANT.**

Where a vendor dies before the contract of sale is by its terms to be performed by payment of the price and delivery of the deed, delay of 3½ years by the vendee, until the younger of two devisees of the land becomes of age, before bringing suit for specific performance, does not constitute such laches as bar the action.

Appeal from judgment on report of referee.

Action by Edward R. Bennet against Sophia A. Bennet, Corolla H. Bennet, and Isaac Marx, as executor of the estate of Corolla H. Criswell, deceased, for specific performance of a contract executed by deceased for the sale to plaintiff of certain land. From an interlocutory judgment entered on the report of a referee, in favor of plaintiff, defendants appeal. Affirmed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

George W. Wingate, for appellants.
George H. Starr, for respondent.

CULLEN, J. This action is brought for the specific performance of a contract for the sale of lands, made between the plaintiff and one Corolla H. Criswell, on the 11th day of February, 1890. By the agreement, Mrs. Criswell was to convey to the defendant all her interest in a parcel of land known as a part of Washington Cemetery, in the county of Kings, for the sum of $14,000, $200 of which was paid on the execution of the contract. The title was to be passed at the office of William Hughes, a lawyer, on the 2d day of June, 1890, at which time Mrs. Criswell was to deliver a proper deed, and the plaintiff was to pay the remainder of the purchase money, $3,300 in cash, and $10,500 by the execution of a purchase-money mortgage, payable in five years, with interest at 5 per cent., payable semiannually. Mrs. Criswell died on the 15th day of March, 1890, leaving a will, of which the defendant Marx was appointed executor, and by which she devised and bequeathed all her residuary estate (which included the lands in dispute) to the defendants Sophia A. Bennet and Corolla H. Bennet. Both Sophia and Corolla were at the time infants. Sophia Bennet became of age September 12, 1891; Corolla Bennet on December 10, 1893. The plaintiff attended at the office of Mr. Hughes on June 2, 1890, the time specified for carrying out the contract of sale. No one appeared on behalf of the vendor or her successors in interest. The referee has found that, at the time the plaintiff so attended, he was ready and willing to carry out the contract. On December 9, 1893, the plaintiff commenced this action to compel the specific performance of the contract. The defendants answered, denying knowledge or belief concerning the making of the contract,

and alleging that the plaintiff at no time was ready or willing to carry out or perform the contract on his part. The condition of the title of the lands agreed to be conveyed is peculiar. The lands are a part of those conveyed by James R. Bennet to the Washington Cemetery, in 1853, by a deed containing numerous covenants and conditions. The proper interpretation of this conveyance has been already the subject of litigation in the courts, and its true effect was determined by the court of appeals in Bennett v. Culver, 97 N. Y. 250. The learned referee decided in favor of the plaintiff, and directed the entry of an interlocutory judgment, by which the defendants were directed to account for all moneys received by them from the Washington Cemetery since the time of the contract. From the judgment so entered, this appeal is taken.

On the trial the execution and delivery of the contract for sale were substantially conceded. The first attack of the appellants is upon the finding of the referee that the plaintiff presented himself on June 2, 1890, and was ready and offered to perform the contract. There is no doubt that at that time the plaintiff attended at the office of Mr. Hughes, and demanded the conveyance. There is no claim that any one attended there on behalf of the defendants. The plaintiff testifies that he had with him, and then and there produced, $3,300 in bills, the cash which was then payable according to the terms of the agreement. In this he is supported by two other witnesses. Mr. Hughes testifies positively that no money was tendered him at that time. The testimony of Stewart, who it is claimed provided the $3,300 in cash, is certainly suspicious. Though he kept a bank account, he admits that this money was not drawn from the bank. He states that it was in bills or cash that he had in his safe. He is unable to name any party from whom he received it, or any part of it, and gives no reasonable explanation why he kept this money, instead of depositing it in his bank account. His story certainly taxes credulity to the verge of disbelief. However, the learned referee saw the witnesses, and the character of the witness and his mode of testifying may have convinced the referee of the truth of his statement, notwithstanding its improbability. We have not the advantage which the referee had of seeing the witness personally, and we do not feel justified in disturbing his determination of the fact, especially as, in our judgment, even if the statement of the witness in this respect was discredited, it would not be fatal to the plaintiff's claim. The plaintiff did not tender at any time the mortgage which the contract required him to execute. It may be therefore conceded that there was not such a technical tender of performance on the part of the plaintiff as to put the defendants in default, and enable the plaintiff to maintain an action at law for a breach of the agreement. But such technical tender is not necessary to the successful maintenance of an action in equity for specific performance. Day v. Hunt, 112 N. Y. 191, 19 N. E. 414.

The defendants had not put the plaintiff in default. For that purpose it was necessary to tender to plaintiff a deed. Thomson v. Smith, 63 N. Y. 301. It is not pretended that the defendants of-

fered in any manner to carry out the contract. On the contrary, they denied its obligations. The contract, therefore, remained outstanding, neither party having tendered strict compliance with its terms. Hence, the plaintiff could not be barred of his rights under the contract without notice requiring a performance in a specified and reasonable time, and, in default of such notice, he was entitled to a specific performance. Myers v. De Mier, 52 N. Y. 647. "When a contract for the sale of lands is fair and just and free from legal objection, it is a matter, of course, for courts of equity to specifically enforce it. But they will not decree specific performance in cases of fraud or mistake, or of hard and unconscionable bargains, or when the decree would produce injustice, or when such a decree would be inequitable under all the circumstances." Margraf v. Muir, 57 N. Y. 158. It has been said: "The specific execution of a contract in any case is a matter not of absolute right, but of sound discretion in the court." Sherman v. Wright, 49 N. Y. 231; Miles v. Iron Co., 125 N. Y. 294, 26 N. E. 261. But the discretion is a judicial, not an arbitrary, one. So, also, it has been held to be error to dismiss an action for specific performance on the ground that the plaintiff had his remedy by an action at law. Baumann v. Pinckney, 118 N. Y. 604, 23 N. E. 916.

The specific performance of the contract thus being the general rule, I think it was incumbent on the defendants to establish a reason, if such there were, that brought this case within the exceptions to the rule. No evidence was given on the trial tending to show either that the contract was unfair or unconscionable when made, or that change of circumstances since its execution would render its specific performance inequitable. The same criticism is to be made on the claim that the plaintiff has been guilty of laches. He waited until the younger devisee became of age, for a period of $3\frac{1}{2}$ years. It is true that he was not compelled to await that event before bringing suit; but nothing appears in the case to show that in this lapse of time any material change in the subject-matter of the contract or the relations of the parties to it has occurred. If such were the case, it was the duty of the defendants to have given evidence of it. We think, therefore, the learned referee rightly determined that the defendants should specifically perform the contract.

It is urged that the referee should not have directed an interlocutory judgment and a subsequent accounting, but should have proceeded with the trial and accounting to a point where he could have directed final judgment. We find no error in the course taken by the referee. It is argued that, if the account had been taken, it might have appeared from the account that the plaintiff had waited until the receipts from the sale of the cemetery lots had paid, at least, a large portion of the consideration money he had contracted to pay. Not a suggestion of this fact appears in the case. The defendants were not precluded from giving any evidence on the subject, nor, in fact, did they offer any. It is therefore now too late to raise this objection. But as the interlocutory judgment would be conclusive on the accounting (except on appeal to the

court of appeals), and it may be that on the accounting it will appear inequitable to charge the defendants with the receipts prior to the time of the commencement of the action (which, however, we do not mean to assert will be the case), we think the judgment should be affirmed, reserving to the defendants the right to litigate on the accounting as to the time from which they are equitably chargeable with any receipts from the lands.

The judgment appealed from should be affirmed, reserving to the defendants the right to litigate on the accounting the time from which they are equitably chargeable with receipts from the lands; costs of this appeal to abide the final disposition of the costs of the action.   All concur.