(47 App. Div. 365.)

### BENNET v. WASHINGTON CEMETERY.

(Supreme Court, Appellate Division, Second Department. January 9, 1900.)

SALE OF LAND TO CEMETERY ASSOCIATION—AGREEMENT FOR COMPENSATION—CONSTRUCTION.

On a sale of land to a cemetery association it was agreed that the purchaser should have $40 for each lot of 400 square feet, and a proportionate sum for larger or smaller lots, which the association should dispose of for burial purposes, and $3 for each grave opening until all the land should

be sold for cemetery purposes only. *Held,* that since to construe the term "grave openings" in such agreement to include every grave opening on lots sold would give the grantor an exorbitant price for his land above the large price which he would otherwise receive, the term must be held to refer to single graves, and not to include those opened on lots sold for cemetery purposes by the association, or by the heirs of the grantor, who had secured lots for speculation and sale.

Appeal from judgment on report of referee.

Action by John A. Bennet against the Washington Cemetery. From a judgment for defendant entered on the report of a referee, plaintiff appeals. Affirmed.   •

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

George H. Starr (Thomas Hooker, on the brief), for appellant.
George W. Wingate, for respondent.

HATCH, J. This action is founded upon a written instrument dated January 25, 1853, executed by James Arlington Bennet, the ancestor of the plaintiff, and his predecessor in interest. The court of appeals, in construing it, has held that the indenture was a mere executory agreement, executed for the purpose of establishing a cemetery, and that title to the lands did not pass except upon a sale of the same for cemetery purposes. Bennett v. Culver, 97 N. Y. 250. The present controversy does not involve the questions which were considered by the court of appeals. Its decision related only to the title to the land unsold for cemetery purposes. By the present action the plaintiff seeks to recover the sum agreed to be paid for the lots sold by the cemetery association for the purpose of interment of the dead, and also to recover for "grave openings" in such cemetery; it being plaintiff's claim that upon a proper construction of the words of the agreement he is entitled to have and receive the sum of three dollars for each grave opening in said cemetery until all of the lots agreed by the indenture to be conveyed have been sold by the defendant for cemetery purposes. The referee reached the conclusion that the plaintiff was entitled to recover a given sum, which was specified in the judgment, for the unpaid purchase price of the lots, but denied plaintiff's right to recover for the grave openings; holding that the agreement did not authorize such recovery. The defendant has not appealed from that part of the judgment rendered against it, but states in its brief that it has complied with such judgment by making payment. The plaintiff appeals from that part of the judgment which denies the right of recovery for grave openings. The executory agreement upon this subject provides:

"That the said party of the second part shall well and truly pay, in lawful money of the United States, half-yearly from the date of this conveyance, to the party of the first part, or his assigns, during his lifetime, or to his attorney or agent or assign, or to his heir or heirs, legatees, executors, or administrators after his decease, the sum of forty dollars for each and every lot of four hundred square feet of land, and proportion for a larger or smaller lot, which the said party of the second part shall dispose of in any manner whatsoever as a place or places for the burial of the dead, and three dollars for each and every grave opening, until all the lands described in this deed, or such part of

it as may remain after the satisfaction of an existing mortgage thereon, shall be sold for cemetery purposes only."

The real point in controversy is the force to be given to the clause, "and three dollars for each and every grave opening, until all the lands described in this deed, or such part of it as may remain after the satisfaction of an existing mortgage thereon, shall be sold for cemetery purposes only." It is quite evident that this clause in the instrument presents the case of a patent ambiguity, and as nothing appears in the record or elsewhere showing that any technical meaning is attached to the words "grave openings" which was understood by the parties, we are relegated in our disposition of the controversy to a discovery of the intent and meaning of the parties, to be gathered from the whole instrument, and the purpose which it sought to accomplish. The contention between the parties as to the meaning of this clause is quite widely divergent, and while each has, from time to time, yielded to some extent to the claims of the other, the subject has been at all times a matter of dispute. There is no basis, therefore, upon which can be founded any view of a practical construction of the instrument in this respect by the parties themselves. The instrument itself was executed in 1853, and it is quite evident from its terms that at this period these premises were farm lands, as a reservation is made in the instrument itself authorizing the grantor to cut and remove the grass, wood, etc., from that part of the property which had not been devoted to purposes of actual interment. It was stated upon the argument by the respondent, and was not then controverted, nor is it questioned in the plaintiff's brief, that at the time of the execution of the agreement these lands were farm lands, worth about $100 an acre, and located entirely outside of the then city of Brooklyn. In construing the instrument, therefore, we are to take into consideration the sum which was to be reserved as the purchase price of the premises, having reference to these conditions. It appeared upon the trial that a lot of 400 square feet, at the price reserved in the grant, would produce $4,320 an acre, —certainly an ample sum for the value of the land at that time, measured by all the contingencies which the agreement contemplated. It further appeared that, taking the number of interments which could be made upon a lot of this size, and allowing, in addition to the $40 which the grantor was entitled to receive as the price of each lot, $3 for each grave opening would produce as the purchase price $9,504 an acre. It is quite true that it was competent for the parties to agree upon this sum as the purchase price of the land, but, in view of its intrinsic value at that time, the exorbitant price which plaintiff's construction of the agreement produces, and all the circumstances of the transfer, may well make us hesitate in so construing the instrument as to produce such a result. The intent of the parties to work this result ought to be clear and convincing. The plaintiff ran no risk. He did not part with his title. The defendant could not incumber it. The plaintiff was charged with the expenditure of no money in connection with it. As it was established as a cemetery, it was exempt from taxation. The plaintiff's only concern was that the lots should be sold. His title was not

affected until they were sold, and he could immediately enforce payment therefor in accordance with the terms of his agreement. It would seem, therefore, if defendant's contention be correct, that an unreasonable sum was reserved as the purchase price, and clear legal right should be shown before permitting it to be exacted. The price to be paid for lots of 400 square feet was $40 per lot, and proportionately for lots of a smaller size. It is claimed by the plaintiff that a single grave is a lot, and is embraced within this provision of the agreement. As the term "grave openings" is general language, it applies to all lots from 400 square feet in size to a single grave; therefore no effect can be given to the words "grave openings" unless they are all embraced. We do not think his contention in this respect can be sustained. No proof is given showing that a single grave is ever designated a "lot." In common usage it is not so designated, and it is commonly understood, when a "cemetery lot" is spoken of, that a plot of ground larger than that embraced within a single grave is meant. It is common knowledge that in the division of cemeteries "lots" and "single graves" have a separate and distinct meaning. To refer to a grave as embraced within the term "lot" would do violence to the meaning of the language. If we construe the language of the agreement as referring to two distinct and separate things, one a lot of 400 square feet, for which payment of $40 was to be made, and the other a "grave opening," as being a single grave, then we have this result: Taking the number of interments which might be made in a lot of 400 square feet, and applying that number to a plot set apart for single graves, the interments in the latter, at the rate of $3 for each grave, would produce, under the agreement, $48 for the plot. This construction would give force and effect to all the language used in the instrument, and provide compensation to the plaintiff for all of the land used for cemetery purposes. As it may be assumed that a single grave would sell for a proportionately higher price, the added compensation to the plaintiff over the lot price would correspond with such result. If the contention of the plaintiff be correct, then, by the terms of the agreement, the moment the cemetery lots are sold by the defendant for cemetery purposes only, all payments, both for lots and grave openings, are to cease, leaving the plaintiff in the position of losing the greater part of the value of his agreement; for, if the term "grave openings" could relate to each interment in every lot until it was full, then, as we have seen, the plaintiff would receive a greater price for the grave openings than he would for the land itself. It is scarcely conceivable that, had the grantor understood, when he executed his agreement, that he was to receive three dollars for each grave opening upon each lot, in addition to the price of the lot, which furnished him the larger compensation, he would surrender such benefit when the lots were all sold. If he was so entitled, and that was a part of the purchase price, and so understood, it passes reason to think that he would not, in terms, have reserved such right until each space of ground had received its inmate. We are unable to conclude, upon any reasonable basis, that the parties understood such to be the force and effect of their agreement. It appeared in the

proof that the plaintiff had secured to himself upwards of 1,000 lots in the cemetery property, to which he or the heirs of the grantor hold the title, and they have engaged with the cemetery authorities in selling these lots to purchasers. It is quite evident, therefore, that the lots in the hands of the plaintiff and the heirs of the grantor have not been conveyed to them for "cemetery purposes only." They hold them for purposes of speculation and sale, to be used for cemetery purposes. It is possible for these persons to dispose of all their lots save one, and hold that, and thereby be enabled to continue to collect the sum of three dollars for each grave opening, until the cemetery shall be filled with bodies to its fullest extent, saving the one lot, and thereby prevent this defendant from ever escaping the payment of three dollars for each grave opened in such cemetery except upon the lot thus retained. To burden the defendant by placing such a construction upon the agreement as permits the working of this result, shocks the moral sense. In the execution of its contracts of sale to purchasers of lots, the defendant makes no reservation for the payment of three dollars for each grave opening, and the plaintiff and the heirs of the grantor sell to purchasers from them their lots under a like contract. The price which has been fixed for the opening of graves is one and two dollars for infants and children and three dollars for adults; but this sum represents an actual expenditure for labor employed in opening and closing the grave and making the interment which about equals the amount of the charge. If the cemetery is compelled to pay such sum to the plaintiff, it will have no funds with which to pay the cost of opening and closing the graves. It is said that the cemetery authorities have power to make rules and regulations covering this charge, and under such authority may increase the cost of such acts in a sum sufficient to carry on its business and pay the plaintiff. This cemetery is organized under the cemetery law, as amended by chapter 245 of the Laws of 1874; and the rules and regulations which it may adopt are such as the law authorizes, and the law only authorizes such as are reasonable. We think, therefore, that, having sold a lot for the purpose of interment for a given sum, it could not, by virtue of any authority contained in the statute or otherwise, under the guise of a regulation, exact from the owner of the lot twice the cost of an interment. In effect, such a rule would operate to increase the purchase price of the lot which the purchaser had paid. It matters not whether the purchaser takes title or only an easement in the lot conveyed. He pays the purchase price, and gets what is necessary to the use to which the land is to be devoted. If he could be subjected to such exactions under the theory of rules and regulations, he might be impoverished by the purchase of a single cemetery lot. It is clear that such a contention cannot be sustained. We think the true construction of this agreement is that the term "grave openings" has reference to single graves, and does not include those opened upon a lot, either by the owner or the defendant, after the same has been sold to a purchaser. Such was the view taken by Mr. Justice Cullen in Bennet against this defendant (Cir. Ct.; 11 N.

Y. Supp. 203), where the same agreement was before him for construction. We think that the decision of the referee was correct, and it should, therefore, be affirmed.

Judgment affirmed, with costs. All concur.