BEGEN v. PETTUS et al.

(Supreme Court, Appellate Division, First Department. May 5, 1911.)

1. VENDOR AND PURCHASER (§ 78*)—CONTRACTS—TIME OF PERFORMANCE.
   In a contract for the sale of real estate, time is not of the essence, unless expressly made so by the contract.
   [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 121–125; Dec. Dig. § 78.*]

2. SPECIFIC PERFORMANCE (§ 92*)—DILIGENCE OF PLAINTIFF—PROCURING TITLE.
   While specific performance of a contract for the sale of real estate may be granted where the vendor has good title at the time of trial, yet equity will not grant relief to a vendor who has not done all that he could to make out a good title within a reasonable time.
   [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 236; Dec. Dig. § 92.*]

3. SPECIFIC PERFORMANCE (§ 92*)—DILIGENCE OF PLAINTIFF—PROCURING TITLE.
   A purchaser, after extending from time to time the time for the completion of the contract, unreasonably terminated all negotiations for the completion thereof. The vendor subsequently made one unsuccessful attempt to complete the contract, and then for seven years made no effort to place himself in a position to carry out the contract by perfecting his title. *Held*, that he was guilty of laches, defeating a suit by him for specific performance.
   [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 236; Dec. Dig. § 92.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by Sadie M. Begen against Isabella Mary Pettus and another. From a judgment for defendants, plaintiff appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Harold Swain, for appellant.
John Brooks Leavitt, for respondents.

SCOTT, J. Appeal by plaintiff from a judgment decreeing specific performance by the appellant of a contract for the conveyance of real property.

On January 27, 1902, defendants contracted to sell and convey to plaintiff certain real property, partly upland and partly land under water, near City Island, in the city of New York, for the sum of $60,000, of which $6,000 was paid on signing the contract, and the balance was agreed to be paid in cash upon the delivery of the deed. The date for closing title was adjourned from time to time, mainly by written adjournments, until May 21, 1903. On April 28, 1902, the Title Guarantee & Trust Company, which acted throughout as the representative of the plaintiff, submitted to defendants, one of whom was a lawyer, a long list of objections to the title, all of which were in time waived or cured. There remained one objection, not included in the foregoing list, which, however, was known and understood by both parties, and which arose out of an overlapping of a small piece of the land under water by the superior and prior title of the heirs and devisees of Elias D. Hunter, deceased. This defect of title was brought to the attention of Isabella M. Pettus, the defendant who is a lawyer, at least as early as some time in the year 1902; but nothing seems to have been done towards removing the objection or acquiring the superior title up to the time of its rejection by the plaintiff on May 21, 1903.

When the last-mentioned day arrived, the defendants being unable to convey the property by a marketable title, the plaintiff declined to consent to any further adjournment, or to proceed further with the contract, and demanded the return of the down payment. The defendants protested at this abrupt termination of the negotiations, and tendered a deed conveying such title as they had. It is found as a fact that they also demanded a reasonable time to cure the remaining defect in their title; but we are unable to find any evidence that such demand was specifically made. It is probably true that the plaintiff's closing of all negotiations was an unreasonably abrupt termination of the attempt to complete the contract, which had been allowed to run along without objection for so long a time; and if the defendants had shown any reasonable degree of diligence in perfecting their title, and, after doing so, had made a new tender of the deed, a strong case would have been made out for decreeing specific performance in their favor. They did not do so, however.

On October 7, 1903, they obtained a deed from a corporation known as the City Island Land & Dock Company purporting to convey

the superior title to the overlapped strip. This company claimed title under a deed, recorded on said October 7, 1903, from the sole surviving executrix of Elias D. Hunter and certain other persons presumably interested in the estate. This deed recited that its consideration was "one dollar and other good and valuable consideration," which proved upon the trial to have been shares of stock in the Land & Dock Company. This deed was submitted to one of the counsel for the Title Company, who, while protesting that anything he might say should not be considered as reopening the contract, expressed the opinion that, under the wording of the power of sale contained in the will of Elias D. Hunter, the deed from his executrix, expressing a consideration other than cash, was not sufficient to convey a marketable title. This view seems to have been accepted by the defendants, for no retender of their deed was made.

Nothing further was done by either party until January, 1905, when plaintiff began the present action to recover back the down payment of $6,000, together with the expenses to which she had been put, and to impress a lien therefor upon the property. The defendants answered, and the action was then allowed to slumber until April, 1910, when it was brought on for trial. The defendants by their amended answer ask a reformation of the contract (which is not insisted upon) and for specific performance on the part of plaintiff. During the trial, an adjournment of a week having been taken, the defendants produced a deed to themselves, sufficient in form, from the sole surviving executrix of Elias D. Hunter deceased, then for the first time apparently perfecting their title and placing themselves in a position to fulfill their contract, although as a matter of fact the deed had not been actually delivered to them, and the consideration expressed therein had not been paid, and, so far as appears, never has been. The court thereupon awarded them specific performance against the plaintiff as of January 1, 1904, involving the payment by plaintiff, not only of the balance of the purchase money, but also of the taxes for the intervening years, all with interest from January 1, 1904.

[1] This judgment is, of course, based upon the rule which prevails in equity that in agreements for the sale of real estate time is not of the essence of the contract, unless expressly made so. Of the existence of the rule there is no doubt, and it is frequently applied; but in the present case it was pushed to an unreasonable length. Conceding that, under all the circumstances, the plaintiff's sudden refusal, on May 21, 1903, to proceed further with the contract, was arbitrary and unreasonable, still the defendants, if they proposed to insist upon the contract, were bound to exercise some degree of diligence to perfect their title. It is clear that they failed in this regard, and, having made one unsuccessful attempt, were content to sit down for seven years, enjoying the use of plaintiff's money, and making no further effort to place themselves in a position to carry out their contract.

The learned counsel for the defendants has called our attention to several reported cases in which specific performance has been decreed against a vendee a considerable time after the date fixed in the contract for the delivery of the deed; but upon examination it will be

found that in each of these cases there has been absent the element of laches on the part of the vendor, which is so prominent a feature of the present case. In the most extreme case (Clute v. Robinson, 2 Johns. 595) seven years elapsed between the date of the contract and the final decree of the Court of Errors awarding specific performance to the vendor. But in that case it was well understood by both parties that there was an infirmity in the title which could be cured only by legislation, and as soon as the Legislature acted, in 1803, the vendor offered to perform. The balance of the seven years was taken up in litigation.

[2] It is the general and proper rule that, while specific performance may be granted if the vendor has good title at the time of trial, yet equity will not extend that favor to a vendor who has not done all that was in his power to make out a good title within a reasonable time. Pomeroy, Specific Per. § 421.

[3] The defendants were guilty of the most extreme laches, after the defect in the first deed from Hunter's executrix had been pointed out, and made absolutely no effort to get a sufficient deed until after they had gone to trial, although the apparent ease with which they then got it indicates that, by very slight effort, they could have perfected their title years before.

We see nothing in the evidence to justify a court of equity in showing to defendants such extreme favor as was extended by the judgment appealed from, which must accordingly be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.