(80 Misc. Rep. 120.)

### BEGEN v. PETTUS et al.

(Supreme Court, Special Term, New York County.  October 23, 1912.)

1. EQUITY (§ 88*)—LACHES—NECESSITY OF PLEADING.

   The defense of laches must be pleaded.

   [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 245, 395; Dec. Dig. § 88.*]

2. PLEADING (§ 269*)—AMENDMENT—LACHES.

   Where the last amended answer in an action to recover a deposit on a contract for the sale of land, in which defendant sought specific performance, was served in November, 1909, and a decision of the Appellate Division was rendered in May, 1911, reversing a judgment for defendant, on the ground that he had been guilty of laches in delaying to cure admitted defects in the title, and no application was made to serve an amended reply setting up defendant's laches, which had not theretofore been pleaded, until the new trial, nearly two years later, plaintiff was guilty of laches in applying to amend.

   [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 811–815; Dec. Dig. § 269.*]

3. SPECIFIC PERFORMANCE (§ 92*)—DILIGENCE—PROCURING TITLE.

   In an action to recover a deposit paid on a contract for the sale of land in which defendant, the vendor, sought specific performance, it appeared that the examination of title by plaintiff's counsel disclosed certain defects, that, after postponement of the closing, the title except as to one parcel was admitted to be good and marketable, that counsel for plaintiff thereafter in 1903 approved defendants' proposed deed of that parcel, but that defendant did nothing about it during 1904, that plaintiff rejected title and brought action January, 1905, and that defendant by answer in April, 1905, sought specific performance, that the action was delayed until December, 1906, by loss of deeds, that the defects in title were curable and were cured at the trial, and that the lapse of time caused no material change in the subject-matter or in the relations of the parties. *Held*, that there had been no laches on the part of defendant, and that he was entitled to specific performance.

   [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 233–244; Dec. Dig. § 92.*]

Action by Sadie M. Begen against Isabella Mary Pettus and others. Judgment for defendants for specific performance.

See, also, 144 App. Div. 476, 129 N. Y. Supp. 218.

Harold Swain, of New York City, for plaintiff.

Walter H. Crittenden, of New York City (Benjamin N. Cardoza and M. J. Stroock, both of New York City, of counsel), for defendants.

NEWBURGER, J.  Plaintiff seeks to recover a deposit paid upon a contract for the sale of lands and for the expenses of the examination of title.  The premises consist of property on Long Island Sound.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Plaintiff, it is conceded, was a dummy for August Belmont & Co. The contract was dated January 27, 1902, and provided that the closing was to be on or before May 1, 1902. A list of objections to the title was submitted, and the closing was postponed by consent to different dates until May 21, 1903, when the title was rejected by plaintiff. At that time practically all the objections had been disposed of, except the one which arose by reason of a claim made by plaintiff of an overlapping of certain of the land under water around High Island by the superior and prior title of the heirs and devisees of Elias D. Hunter. Although plaintiff rejected the title in May, 1903, it is apparent that all the adjournments were for the purpose of curing whatever defects plaintiff claimed there was to the title. It is conceded that on the 7th day of October, 1903, Mr. Hunter tendered a deed for the overlapping strip to Mr. Ford, the solicitor of the Title Guarantee & Trust Company, who represented those who were financially behind the plaintiff, who was an employé of the title company. Some technical objections to the deed were made, but subsequently Mr. Hunter tendered a corrected deed, and offered to give any other deed necessary to complete the title. Thereafter neither party appears to have done anything in reference to the title until January, 1905, when this action was brought. In April, 1905, defendants served an answer demanding specific performance. On the 24th day of May, 1905, an amended answer was served again demanding specific performance. A second amended answer was served in November, 1909, in which defendants again demanded specific performance. The case was brought to trial in April, 1910, and the learned trial justice decreed specific performance. Both sides concede that the delay in bringing the case to trial was not occasioned through any negligence of either of the parties. On an appeal by the plaintiff to the Appellate Division from the decree requiring specific performance the judgment was reversed, and this is the second trial pursuant to the order of reversal.

It is apparent from a reading of the opinion of the Appellate Division that the court reversed the judgment and granted a new trial solely upon the ground that the defendants had been guilty of laches, and therefore were not entitled to specific performance. See Begen v. Pettus, 144 App. Div. 476, at page 479, 129 N. Y. Supp. 218, at page 220. Mr. Justice Scott, says:

"This judgment is, of course, based upon the rule which prevails in equity that in agreements for the sale of real estate time is not of the essence of the contract unless expressly made so. Of the existence of the rule there is no doubt, and it is frequently applied; but in the present case it was pushed to an unreasonable length. Conceding that, under all the circumstances, the plaintiff's sudden refusal, on May 21, 1903, to proceed further with the contract was arbitrary and unreasonable, still the defendants, if they proposed to insist upon the contract, were bound to exercise some degree of diligence to perfect their title. It is clear that they failed in this regard, and, having made one unsuccessful attempt, were content to sit down for seven years enjoying the use of plaintiff's money and making no further effort to place themselves in a position to carry out their contract. The learned counsel for the defendants has called our attention to several reported cases in which specific performance has been decreed against a vendee a considerable time after the date fixed in the contract for the delivery of the deed, but upon examination it will be found that in each of these

cases there has been absent the element of laches on the part of the vendor, which is so prominent a feature of the present case. In the most extreme case (Clute v. Robison, 2 Johns. 595) seven years elapsed between the date of the contract and the final decree of the Court of Errors awarding specific performance to the vendor. But in that case it was well understood by both parties that there was an infirmity in the title which could be cured only by legislation, and as soon as the Legislature acted, in 1803, the vendor offered to perform. The balance of the seven years was taken up in litigation. It is the general and proper rule that, while specific performance may be granted if the vendor has good title at the time of trial, yet equity will not extend that favor to a vendor who has not done all that was in his power to make out a good title within a reasonable time. Pom. Spec. Perf. § 421. The defendants were guilty of the most extreme laches after the defect in the first deed from Hunter's executrix had been pointed out and made absolutely no effort to get a sufficient deed until after they had gone to trial, although the apparent ease with which they then got it indicates that, by very slight effort, they could have perfected their title years before. We see nothing in the evidence to justify a court of equity in showing to defendants such extreme favor as was extended by the judgment appealed from, which must, accordingly, be reversed and a new trial granted, with costs to appellant to abide the event."

[1] Laches was not pleaded by the plaintiff in any reply to the answer served in April, 1905, to the amended answer served in May, 1905, nor to the second amended answer served in November, 1909, just previous to the first trial. It has been repeatedly held that laches must be pleaded. In Zebley v. Farmers' L. & T. Co., 139 N. Y. 461, 34 N. E. 1067, Mr. Justice O'Brien says:

"The inference, with respect to the existence of a claim in fact, to be drawn from such facts and circumstances may be strong or otherwise depending upon the peculiar features of each particular case, but generally it cannot be said, as matter of law, that a claim or cause of action not barred by the statute of limitations is defeated by mere lapse of time alone. Under our system of procedure, even where the complaint upon its face discloses a cause of action barred by the statute of limitations, the question cannot be raised by demurrer, but by answer, and certainly a party ought not to be permitted to avail himself of the objection that the demand is stale, in consequence of facts not constituting a statutory bar, on easier terms than he could avail himself of the statute of limitations. A court of equity undoubtedly may, under proper circumstances, in the exercise of discretion, decline to aid a party in the enforcement of a stale demand; but it is believed that such a result can seldom, if ever, be reached upon a demurrer to the bill and without full examination of all the facts and circumstances of the case."

See, also, Sage v. Culver, 147 N. Y. 244, 41 N. E. 513; Treadwell v. Clark, 190 N. Y. 60, 82 N. E. 505; Cox v. Stokes, 156 N. Y. 511, 51 N. E. 316. Groesbeck v. Morgan, 206 N. Y. 385, 99 N. E. 1046, recognized laches as a defense in an action for a specific performance. See, also, Pollitz v. Wabash R. R., 207 N. Y. 113, 100 N. E. 721.

[2, 3] An examination of the brief submitted to the Appellate Division shows that the defendants' counsel not only failed to call the attention of the Appellate Division that the defense of laches had not been pleaded, but absolutely makes no mention of such a defense, contenting himself with a mere reference to the delay in bringing the case to trial; nor was the question of defendants' laches raised before the trial justice. The laches of the defendants in the procuring of the Hunter deed referred to by Mr. Justice Scott is negatived by the

testimony upon this trial. A reading of the testimony given upon the second trial discloses that when the objections were made to the title an agreed case was submitted to the Appellate Division, and the following stipulation was made:

"The examination of the title by plaintiff's counsel disclosed numerous defects which have been duly called to the attention of vendors' counsel and admitted by such counsel to exist. Adjournments of the closing have been taken by mutual consent from time to time to enable vendors' counsel to clear away such defects. All have been disposed of except the one which is the occasion of this submission and which is designated as the Peter V. King question for convenience. Whether or not the vendors are able to convey to the plaintiff the lands described in the contract as High Island by a good title in fee simple is the question in controversy between the parties. The title to the other parcels of land described in the contract is admitted to be good and marketable."

The Appellate Division dismissed this submission for technical defects in March, 1903. It will thus be seen that the defect in the title to the land under water was not regarded as important, and was not to be taken up until the main question was disposed of. On March 24, 1903, by a letter (see defendants' Exhibit 4), the Title Guarantee & Trust Company wrote to Miss Pettus referring to the objection of the title, stating that, in view of the dismissal by the Appellate Division, the King matter must be taken up first, and the overlapping water grants could be determined later. This letter was not in evidence on the first trial. On the 24th of April, 1903, Miss Pettus reported to the Title Guarantee Company that the proceedings for the correction of the Peter V. King defect had been finished, and on the 28th of April, 1903, she received a letter (marked defendants' Exhibit 9) from Ford, the solicitor of the Title Guarantee Company, returning the proposed deeds in the High Island matter, with their approval, and stating that an adjournment would be taken in order to enable the Title Guarantee Company to confer with their clients. On the 20th of May, 1903, the defendants received the first intimation that the title would not be taken because of the overlapping water front, and on the next day plaintiff rejected the same. As to the deed from Hunter, while Mr. Ford made some technical objections to the form by reason of a defect in the certificate of acknowledgment, yet, in December, 1903, Mr. Hunter tendered a corrected deed and informed Mr. Ford that they were prepared to give any other deed necessary to make the title complete. While the defendants did nothing in 1904, the plaintiff did not commence her action until January, 1905. In April, 1905, the defendants served their answer demanding specific performance. The answer printed in the appeal book is the one of 1909. It furthermore appears on this trial that the title company lost some of the deeds; that the loss was discovered in May, 1905; and that Miss Pettus was then employed to procure duplicate deeds, which consumed some time, and they were finally obtained in December, 1906 (see S. M. pp. 125–131). Furthermore, nothing appears in the case that in the lapse of time complained of any material change in the subject-matter of the contract or the relations of the parties to it has occurred. Bennet v. Bennet, 10 App. Div. 550, 42 N. Y. Supp. 435. It is suggested, however, by the plaintiff that the court at this time might permit her to

amend her reply and set up laches of the defendants. Is not the plaintiff herself guilty of laches in applying at this time to amend her pleadings?

The last amended answer was served in November, 1909, and the decision of the Appellate Division was rendered in May, 1911, and no application was made to serve an amended reply. As to the title itself, the defects complained of were curable and were cured at the trial. It is immaterial that the defendants have not paid the consideration for the deeds produced by Hunter. He testified he made the tender, and that the deeds were in his possession ready to be delivered.

Judgment for the defendants for specific performance. Submit findings and decree.