BEGEN v. PETTUS et al. (No. 7221.)

(Supreme Court, Appellate Division, First Department. May 7, 1915.)

SPECIFIC PERFORMANCE &#9858;119—OBJECTIONS TO TITLE—BURDEN OF PROOF.

     A purchaser, who refused to complete the purchase because of an alleged defect in the title, consisting of an overlapping of part of the land to be conveyed by a prior conveyance, has the burden of proving that the overlap actually existed, and where the evidence is not sufficient to warrant a finding that it did exist, the vendor is entitled to specific performance of the contract.

     [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 382, 383; Dec. Dig. &#9858;119.]

Appeal from Special Term, New York County.

Action by Sadie M. Begen against Isabella M. Pettus and others to recover payments made on a contract for the purchase of land. From a judgment decreeing specific performance of the contract in favor of the defendant as prayed by a counterclaim (140 N. Y. Supp. 765, 80 Misc. Rep. 120), plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Harold Swain, of New York City, for appellant.
Moses J. Stroock, of New York City, for respondents.

&#9858;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SCOTT, J. This action was brought to recover the down payment of $6,000 on a real estate contract between plaintiff and the living defendants and Sarah Louise Pettus, of whose will the defendant David C. Curtis is the executor. The defendants counterclaimed, demanding specific performance by the plaintiff; and from a judgment in their favor, said plaintiff appeals.

The case has been twice tried. On the first trial defendants recovered a judgment for specific performance, which was reversed by this court and a new trial granted. Begen v. Pettus, 144 App. Div. 476, 129 N. Y. Supp. 218. On the second trial the case was much more carefully and elaborately tried than on the first, and the record now before us differs substantially from that upon the former appeal. The essential facts may be briefly stated. The subject of the contract of sale was an island known as High Island, situate in Long Island Sound, near City Island, together with the adjacent land under water. The plaintiff herself had no personal interest in the purchase, being concededly a dummy for a purchaser who, for strategical reasons, preferred to remain undisclosed. Such purchaser was represented by the Title Guarantee & Trust Company of the City of New York. When that company began to search the title, it submitted to defendants a formidable looking list of objections, all of which, however, were successfully met and overcome before the rejection of the title by plaintiff, except the one upon which she finally rested her objection, and which raises the real point in controversy.

The contract was executed on January 27, 1902. At first, and for a considerable period, the vendee was apparently very desirous of completing the purchase, and the Title Company, representing her, coöperated with defendants in curing the defects in the title, to this end consenting to numerous adjournments of the date of closing. Very suddenly and abruptly, however, on May 21, 1903, the vendee refused to take the title or to further adjourn the date for closing. She never made any tender of performance. The vendors did make such tender.

The specific objection upon which the vendee rested her refusal to accept the deed and complete the purchase was an alleged overlapping of the land under water included in the contract by an earlier grant of land under water surrounding City Island. The alleged overlap was of comparatively small extent, amounting to not more than 5 per cent. of the whole parcel covered by the contract. It is made quite obvious from the testimony in the case that this apparent defect in defendant's title was not considered a very serious or insurmountable obstacle to the closing of the title until it became desirable, for other reasons, to refuse to complete. It was, indeed, claimed by the Title Company, from an early stage in the examination of the title, that such an overlap existed; but it was treated and spoken of as a defect which could easily be remedied or provided for when other objections had been disposed of. In the course of the examination a question arose as to the validity of certain trusts attempted to be created by a will found in the chain of title, and the parties agreed to submit that question for determination to this court. A submission was accordingly drawn and

signed by the vendors and vendee, in the course of which it was stated that:

"The examination of the title by plaintiff's counsel disclosed numerous defects, which have been called to the attention of vendor's counsel and admitted by such counsel to exist. Adjournments of the closing have been taken by mutual consent from time to time, to enable vendor's counsel to clear away such defects. *All have been disposed of except* the one which is the occasion of this controversy, and which is designated as the Peter V. King question for convenience."

We quote this excerpt from the submission, not as constituting an estoppel, or even an admission against interest on the part of the vendee, but merely as strong evidence that the alleged overlap was not at that time considered a serious defect in the title. At the time of the vendee's refusal to complete the contract, every other objection to the title had concededly been met and cured, so that plaintiff was left in the position of relying solely upon this one objection, and as to that she bore the burden of proof. On the former trial it was, if not conceded, at least practically assumed, that the alleged overlap did in fact exist, and we held that defendants had so unreasonably delayed taking the proper steps to cure the defect that they were not entitled to affirmative relief in equity.

Upon the second trial the fact of the overlap was strenuously contested, and the trial court has specifically refused to find that such overlap did in fact exist. If it did not exist, the vendee's rejection of the title was unjustified, and the vendors were entitled to a performance of the contract at the date on which they tendered performance. To reverse the judgment we should be obliged to find that the court erred in thus refusing to find, as matter of fact, that the alleged overlap did exist. We have examined with care the evidence upon this question, including the numerous maps and surveys used upon the trial. That evidence is too unsatisfactory to enable us to find, as matter of fact, that the alleged overlap did exist, and we cannot, therefore, overrule the trial court upon that question. Unless the overlap did exist, and the burden was upon plaintiff to prove it, the defendants were not in default when the vendee refused to complete the purchase, and what they did or failed to do after that date becomes immaterial.

The refusal to find that the overlap existed leaves plaintiff wholly in the wrong, and justifies the judgment appealed from, which is accordingly affirmed, with costs. All concur.